## No. 9222.

## SUCCESSION OF COLIN J. NICHOLSON ON OPPOSITION OF ST. ANNA ASYLUM.

An executor is, in effect, but the mandatory of the testator touching the dispositions of the will. He must, in the exercise of his functions thereunder, conform to its terms and directions. So where he is instructed to pay a stipulated sum to any asylum he may select "especially devoted to the care of aged persons," he is not authorized to give it to an asylum devoted by the terms of its charter, "to the relief of destitute females and helpless children" and cannot be compelled to do so.

APPEAL from the Civil District Court for the Parish of Orleans, Lazarus, J.

*E. H. Farrar, Blanc & Butler* and *Merrick, Foster & Merrick* for the Asylum, Appellee.

*Singleton, Browne & Choate* for the Executor and Legatee, Appellant.

The opinion of the Court was delivered by

Todd, J. The St. Anna's Asylum claims a bequest of $5000 under the last will of Colin J. Nicholson, deceased, and institutes a proceed-

ing against John T. Hardie,executor of said last will, to enforce the recognition of its right to and payment of said bequest.

The clause of the will under which the claim is made reads thus:

"To the support of asylums in the faith of the Protestant religion, especially devoted to the care of aged persons, $5000. This, or these, as the case may be, to be located in the city and parish of Orleans, and I leave to my executor the selection of such institution or institutions."

The executor resists the demand, and retains the sum named in his hands for the following reasons, which we find embodied in his final account and which is reproduced in his answer to the present suit, to-wit:

"I have not paid the legacy bequeathed to the support of asylums in the faith of the Protestant religion, especially devoted to the care of aged persons, $5000, this, or these, as the case may, to be located in the city or parish of Orleans, La., for the reasons that there are no asylums of the kind indicated located in the city or parish of Orleans."

The sole question for our determination under the pleadings is, whether or not the St. Anna's Asylum comes within the terms and conditions of the will, and is or not entitled to receive the legacy in question.

We find that the St. Anna's Asylum was chartered by an act of the General Assembly passed in 1853.

The title of the act is: "An Act to incorporate the St. Anna's Asylum for the relief of destitute females and helpless children of all religious denominations."

The first section of the act reads:

"That all persons who are now members of said association and such other free white persons as may, in accordance with the provisions of this charter, be hereafter associated with them are hereby created a corporation under the title of the St. Anna Asylum for the relief of destitute females and helpless children of all religious denominations," etc.

We know of no better guide for ascertaining the character of an incorporated institution as the objects of its organization and the purpose or purposes to which it is devoted, than the provisions of its charter. In fact to the charter alone must we look for information on these points.

The acts of the officers or members of such association, even through a series of years, cannot impart to it a different character or different purpose than that declared and fixed by the charter.

We must presume that all acts and proceedings are in strict conformity with the law that created it, and if they are not, they are powerless to establish a different institution with other objects and ends than warranted by the terms of the creative act.

With such elementary principles to guide us, the question before us becomes of easy solution.

The testator directed $5000 to be paid to an asylum or asylums "*especially* devoted to the care of aged persons." Was the executor under such direction, authorized and required to pay the amount to an institution established expressly and solely for the relief of "destitute females and helpless children?" We are constrained to answer this question in the negative.

An executor is, in effect, but the mandatory of the testator. The will is his mandate. He has no power and is subject to no duty except within its terms and conditions. The testator in this instance evidently and beyond question wished to relieve by his charity persons needing care and attention in their old age, and he exacted that for aiding such persons, the means of relief placed in the hands of his executor should be strictly applied. We cannot possibly gather from the will, by any rule of construction, that it was the testator's desire that his bounty should be bestowed on any other class of persons.

Hence, if with such plain direction before him, the executor instead of devoting the fund to help the aged, should cause it to be applied to the relief of destitute females, regardless of age, and helpless children, it would seem that so far from acting within the warrant of his authority he would contravene the very letter and spirit of it.

It may be true that the St. Anna Asylum has under its care a number of aged females; however, this is but a mere incident in its administration. The will required that the asylum to be selected by the executor should be especially devoted to the care of the aged; that is, that its chief, main, if not exclusive, object should be to provide for this class of persons. It might, moreover, be reasonably inferred that the evident intent of the testator from the expression "aged persons," was to extend his benevolence to the aged of both sexes; that if he intended to confine it to women exclusively, he would assuredly have used words to show such limitation. We learn from the testimony, as might be inferred from the charter, that aged men are excluded from the asylum.

Under these views it becomes unnecessary to determine whether this asylum is a Protestant asylum, or, in the language of the will, one in the faith of the Protestant religion; for, since it has failed to establish

one of the conditions under which it could claim the legacy, it would not help it, even were it shown that it fulfilled the other requirement.

There was some discussion between counsel touching what should be done with the fund should the plaintiff be deemed not entitled to it. Evidently this is no concern of the Asylum. Being without interest it cannot contest any disposition of it that has or may be made by the executor. Nor have we anything to do with the question raised with respect to the discharge of the executor and the homologation of his account. The rejection of plaintiff's claim leaves all such matters relating to the succession of Nicholson in *statu quo*.

The judgment which was in favor of the asylum must be reversed.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed, and that the demand of the St. Anna Asylum be rejected with cost in both courts.

Rehearing refused.