Statement of the Case.
MONROE, J.
Plaintiff, who is one of the seven sons of Leopold Weil and his wife, Biena, both deceased, and who was one of the incorporators, and is one of the stockholders, of the defendant company, sues to have decreed null, void, and of no effect the notarial act purporting to be the charter of said company; the main ground upon which he relies, as set forth in his petition, being that the real and sole purpose for which the corporation was established, or was attempted to be established, was to receive and hold the immovable property, which constituted the bulk of his father’s estate, in order that his brothers, by a secret understanding among themselves, might be able to control said property, after the death of his father, and thereby deprive plaintiff and his two sisters of the full enjoyment of their inheritance. He alleges: (1) That the signers did not appear, or acknowledge their signatures to the act in question, before the notary; (2) that the word “limited” was, in *941 tentionally, omitted from the title of the alleged corporation; (3) that the purposes set forth in the act are not purposes for which a corporation can lawfully be established; (4) that those purposes cannot be combined for the establishment of the same corporation. He further alleges that nothing was paid for the shares subscribed, and that the corporation, not having been legally established, had no capacity to receive the real estate attempted to be transferred to it by Leopold Weil. He prays that the pretended corporation, as, also, his brothers, his sister, Mrs. Heinemann, and the surviving husband and testamentary executor of his deceased sister, Mrs. Steeg, be cited, and that there be judgment decreeing said pretended corporation not to have been legally organized;that he be appointed receiver thereof, with power to administer the property held by it; and that said corporation and its officers be enjoined from, in any manner, interfering with or disposing of said property or the income therefrom. The defendant company exc'epted, alleging that the petition discloses no cause of action; that there is a nonjoin-der, because the heirs of Mrs. Steeg have not been made parties defendant; that there is a misjoinder because the corporation, alone, was the proper party to be sued in an action to annul its charter, until which is done no action will lie “for a receivership to sell or divide the property among the stockholders” ; that the Attorney General, alone, can bring a suit to annul or forfeit the charter; that plaintiff has no capacity so to do; that plaintiff, by reason of the fact that he was one of the incorporators and stockholders, and has participated in the meetings of the stockholders, is estopped to make the present attack. Mrs. Heinemann and the heirs, as well as the surviving husband and testamentary executor, of Mrs. Steeg, answered, practically, joining in the prayer of plaintiff’s petition; the heirs of Mrs. Steeg alleging that their mother has brought a suit having the same object in view, to which they have been made parties, since her death, and which is still pending. The company’s exception of “no cause of action” having been overruled, and its other exceptions having been referred to the merits, it answered, affirming the validity of its charter and praying that plaintiff’s demands be rejected.
It appears from the evidence that Leopold Weil and his partner in community had reared the seven sons and two daughters who figure in this litigation, and had accumulated an estate which was worth (roughly speaking) $240,000, or more, and, of which, say, five-eighths consisted of real estate and three-eighths of other property; that in 1904 Mr. Weil, being then about 67 years of age, and, though still attending to his affairs, feeling, perhaps, that he might be called hence at any time, concluded that it would be advisable to organize a corporation for the handling of his real estate, which consisted of a great many distinct parcels (certainly more than a hundred, though the exact number does not appear), and, with that view, invited his sons to co-operate with him, which they did, the seven sons and the father appearing before a notary, on May 19, 1904, and declaring, by authentic act, that they constituted themselves a corporation, for the purposes and on the conditions set forth in the act, to wit:
“Article 1. The name * * * of this corporation shall be the Leopold Weil Building and 'Improvement Company ; its domicile shall be in the city of New Orleans * * * and it shall have * * * existence for 99 years. * * * It may have, 'hold, purchase, sell, convey, lease, rent, pledge, or mortgage, property, personal, movable and immovable, sue and be sued, and may have a corporate seal.
“Art. 2. The objects and purposes for which this corporation is organized and the nature of the business to be carried on by it are declared to be: To purchase, own and improve real estate; to build, erect, sell, or lease, houses and lands, for dwellings and other purposes; to purchase, drain, reclaim and improve lands, and to build thereon and to -render the same suitable for agricultural and residential purposes; and, generally, to engage in such business as may be necessary or incidental to the purposes herein *943 set forth and to do all and everything pertaining to, or, in any way connected with, the purposes herein declared, including the power to borrow money and to secure the same by mortgage or pledge on any of the property hereunder acquired, and to issue bonds or notes therefor.”
Article 3 declares that the capital stock shall be $500,000, divided into shares of $100 each, to be fully paid for, when subscribed, in cash, services, or property; that the corporation may commence business when $100,-000 of the stock shall have been subscribed; and, further, as follows:
“Whenever any shareholder shall wish to sell his shares of stock, * * * the other shareholders shall have the privilege of buying, in proportion to the shares owned by them, at the price, bona fide, offered therefor, in writing, by an outsider, and submitted to the board of directors, and, if no price is offered by an outsider, then, the remaining shareholders shall have the privilege of buying the shares at the book value thereof, with such allowance, if the corporation is earning a dividend, added thereto, and for the good will of the business, as the average net earning capacity of the stock for the years preceding the sale, shall fairly entitle them to.”
Article 4 vests the powers of the corporation in a board of five directors, who are required to be stockholders, and names Leopold, Samuel, Jacob, Emanuel, and Solomon Weil as the members to constitute the first board and to hold office until the last Monday in May, 1905, when, and annually thereafter, directors were, and are, to be elected.- The article also provides for the election, by the directors, of a president, vice president, and secretary-treasurer, and the appointment and employment of other officers and agents, and it names Leopold Weil as the first president; Jacob, vice president; and Emanuel, secretary-treasurer. It further provides that the board shall appoint one of its members general manager, with power to act, upon conditions to be imposed by the board.
Article 6 provides for the liquidation of the corporation, upon the expiration of its charter, or if dissolved prior to that time.
“Art. 7. No action of stockholders, at any meeting, shall be valid, or binding, unless stockholders representing a majority of all the stock shall be present or represented by proxy, and it shall require a vote of, at least, three-fourths of the stock, so present or represented, to elect directors, or to amend the charter, or to dissolve the corporation, or to do any other act at stockholders meeting.”
The charter was signed by Leopold Weil, as a subscriber for 1,333 shares of the stock of the company, and by his seven sons, each, for one share, for which they paid, in cash; and two months later (on July 29, 1904) Leopold Weil sold and transferred to the company his real estate in New Orleans, for the agreed price of $142,300, represented by 1,423 shares of the company’s stock (which included the 1,333 shares for which he had originally subscribed). Thereafter, on February 20, 1905, he died, leaving a will, of date April 1, 1897, whereby he divided his estate equally among his children, subject to the usufruct of their mother. The will was admitted to probate upon the petition of his sons, Samuel and Jacob, who were named executors, and an inventory was made, which was signed by all the heirs, and which showed assets to the value of $239,424.10, including 1,516 shares of the stock of the defendant company, appraised at $152,500, and other property, appraised at $86,924.10. In January, 1907, the executors filed an account, showing a balance, after deducting all liabilities, of $222,932.08, of which one-half, or $111,466.04. went to the widow in community. And on February 27, 1907, on the petition of the executors, there was judgment putting the widow and heirs in possession of the estate of the decedent; the former as usufructuary, and the latter as owners, subject to the usufruct of their mother. On March 19th following, Mrs. (widow) Weil, by notarial act, donated to each of her children 50 shares of the stock of the defendant company. On October 19, 1908, Mrs. Weil died, leaving a will, bearing *945 date April 12, 1897, whereby she, like her husband, divided her estate equally among her children, and her succession was duly opened. The inventory showed assets to the value of $23,370.48 (of which $13,720 was represented by the stock in the defendant company), and it was filed and homolo-gated on January 4, 1909. In the meanwhile (on December 24, 1908) Mrs. Steeg had instituted the suit, to which reference has been made, to annul defendant’s charter, on the ground that it creates a prohibited substitution, or fidei commissum, and to obtain a partition of the real estate held by said corporation, and her example was followed by plaintiff, who, on March 23, 1909, instituted the present suit; the same parties being before the court, and the main issue being the same in both cases. The case in which Mrs. Steeg (who died pending the appeal) was plaintiff has recently been decided by this court, and the judgment therein rendered will be referred to hereafter. In the instant case, plaintiff testified that his relations with his father had not been as friendly as were the relations between his father and his brothers, which condition had existed for some years, that the relations between bis father and Mrs. Steeg were friendly, but that his father’s relations with Mr. and Mrs. I-Ieinemann were “not very good”; and there is some testimony tending to show that Mr. Steeg is not a favorite with the family. Plaintiff admitted that, after the death of his father, he attended the annual meetings of the stockholders of the defendant company and voted his stock; the minutes showing that, at the meetings in 1907 and 1908, he seconded the nominations of the directors, who were elected by unanimous vote. After the death of Leopold Weil, his son Jacob was made president of the company, and his salary was fixed at $100 per month; Samuel was made vice president, at a salary of $50 per month; Solomon was made general manager, at a salary of $95 per month; and Emanuel was made secretary-treasurer, at a salary of $80 per month, though, as we understand the testimony, Solomon does the work pertaining to that office, and receives the salary, and Emanuel receives $100 a year for services, rendered, or to be rendered, as notary.
It appears that Mr. Steeg, as the representative of his wife, also attended the stockholders’ meetings and voted her stock, and it does not appear that either he or the plaintiff ever objected to the salaries, as fixed for the different officers, or that they ever made any demand for the declaration of a dividend; the nearest approach to such demand having been an inquiry by Mr. Steeg, on one occasion, addressed to the president, when the meeting had adjourned or was about to, adjourn, as to what would be done about dividends, which inquiry the president appears, informally, to have submitted to those present, by whom the answer was made that no dividend would be declared.
Plaintiff testifies that he did not attempt to do anything at the stockholders’ meetings because he knew it would do no good; the idea conveyed by his testimony being that his brothers, constituting the majority, were united and were determined to carry out the policy recommended by their father, concerning which, and concerning his reasons for participating in the creation of the defendant corporation, plaintiff testifies as follows:
“Q. How did you come to become an incor-porator of this alleged corporation? (Objection, ruling, and bill by defendant.) A. Father told me that he would like his real estate to. stay intact, after his death, and there be no division among the heirs. (Motion to strike out, ruling, and bill.) Q. Mr. Weil, did you have any other reason for becoming an incorporator of this alleged corporation? A. Another reason was that I was afraid that my father might cut me off from some of my inheritance; not for myself, but for my children and wife, because I could always make a living. * * * Q. When did you first question the legality or validity of *947 this corporation? A. After my mother’s death. Q. What were your reasons, if any, for not questioning it before that time ? A. Por fear of cutting off my inheritance by my father. Q. By your father? A. Yes, sir; by my father and mother.”
It appears, also, as an inference from the testimony of the witness, that he considered, himself badly treated, in that he was not given a salaried office in the company, and that his younger brother, William, was made a director (though he seconded the nomination), whilst he was not so honored. The other witnesses testify that the relations of the family with Mr. and Mrs. Heinemann and with Mrs. Steeg were friendly, and the wills of both Leopold Weil and his wife declare that Mrs. Heinemann is not to be called on to collate what she may, already, have received; no other heir being mentioned in that connection. Upon the whole, whilst it seems probable that Leopold Weil considered that it would be a good thing for his heirs to hold on to his real estate, and buy more, at least, for the time, the evidence does not authorize the conclusion that the policy which he had practiced, and which he recommended to his heirs, on that subject, was inspired by any feeling of hostility to his sons-in-law, or either of them, or any prejudice against the plaintiff or his sisters, since, if he had entertained such prejudice, he could have exhibited it, to some effect, by leaving the disposable portion of his estate to his other heirs. As to the salaries received by the officers of the defendant company, we find them uncommonly low in proportion to the work and responsibility imposed on those officers, whose administration of the property intrusted to them seems to have been economical, honest, and judicious; that property, to which they have added, by purchases, to the extent of about $75,000, and of which they have sold to the extent of about $24,000, being worth considerably more than when they took charge of it. It may be said, in concluding this statement, that defendants, feeling that the revenues which were coming in would otherwise be tied up by this litigation, in July, 1909, declared a dividend of 5 per cent., and in October, following, another dividend of 20 per cent., on the capital stock of the company, and that plaintiff has abstained from calling for the amount due him, though notified so to do.
Opinion.
In the suit brought by Mrs. Steeg, and in which the plaintiff herein and his sister, Mrs. Heinemann, practically joined, it was found that the sole issue presented was whether the defendant is an illegal corporation, as having been created for the purpose of evading the inheritance laws of the state by the establishment of a trust intended to hold the property acquired from Leopold Weil in perpetuity, keep it out of commerce, and prevent its partition among his heirs; plaintiff’s counsel arguing in support of the affirmative side of the question and contending that the trust so established (as he thought) amounts to a prohibited substitution, or fidei commissum. The majority of this court were of a different opinion, and the views of the court were expressed, in part, as follows, to wit:
“It is, however, an essential requisite to a prohibited substitution that the property conveyed to the first recipient shall be held by him, without the capacity to alienate it, and thus be tied up, in his hands, during his life, and that the ultimate beneficiary, to whom it is to be delivered by the first recipient, shall come into the enjoyment of it only upon the death of such first recipient. The fidei commissum differs from the prohibited substitution, in that, in such, case, the charge imposed upon the first recipient is to be executed during his life, and he holds and administers the property as trustee for the beneficiary, in whom, alone, the title vests. Beaulieu v. Ternoir, 5 La. Ann. 480; Succession of Michon, 30 La. Ann. 218; In re Billis’ Will, 122 La. 543, 544 [47 South. 884, 129 Am. St. Rep. 355]. In the instant case, a corporation was created, the objects and purposes of which, as declared in its charter, are ‘to purchase, own, improve and sell, real estate; to build, erect, sell, or rent, or lease, houses and lands; s= * * purchase, drain, reclaim and improve lands, and to build .thereon and to render the *949 same suitable for agricultural or residential purposes; and, generally, to engage in such business as may be necessary or incidental to the purposes herein sét forth.’ Being purely a creature of the law, the company cannot, in the nature of things, have any purpose other than those declared in that law, and, whilst its policy, as controlled by the natural persons who have administered its affairs, seems, thus far, to have been rather to buy real estate than to sell it, and to 'reinvest its profits, rather than distribute them among the shareholders, that fact, we imagine, is apart from the question under consideration, since the company cannot be held, on that account, to have been created for the purpose of tying up Leopold Weil’s estate, any more than could a bank, in the stock of which he may have invested other funds (be so held), should the directors conclude to accumulate a surplus, rather than declare dividends. Moreover, though Leopold Weil (and other in-corporators, as well) may have been inspired by the motive which plaintiff ascribes to them, no limitations or obligations were, or could have been, imposed upon the corporation, save those which are contained in the charter, and, as the charter contains none which would prevent it (the corporation) from alienating the property acquired from Leopold Weil, or which require it to administer that property for the benefit of, or turn it over to, any one, save those who, as stockholders, administering the corporation, are already in possession of it, it cannot be said that any substitution or fidei commissum has been created, within the meaning of the law prohibiting trusts of that character, unless we should be willing to go further and say that all property owned by corporations is held in trust, within the meaning of that law; in which case, we should be obliged to read out of the books all of the law authorizing the establishment of corporations. It is said that the maintenance of the corporation and of the disposition of property here attacked will be tantamount to the repeal of the law regulating the devolution of property by inheritance; but we do not so regard it. It has always been the law, here, as it has been elsewhere, that a citizen may acquire stock in a corporation, and may pay for it, in cash or in property, in either case, exchanging one species of property for another species, which he prefers, and which, like that with Which he parts, will, in the event of his death, pass to his heirs. * * * In conclusion, it must be remembered that the charter provisions, of which plaintiffs (the heirs of Mrs. Steeg, who were made parties plaintiff after her death) complain, were agreed upon by the incorporators of the company, who were sui juris, were dealing with their own property, and who, subject to those provisions, converted that property into the stock of the company. The provisions so agreed upon impose the same obligations upon all the stockholders, and, though somewhat out of the ordinary, are, by no means, unheard of, and, so far as we can see, are not, intrinsically, illegal; the illegality, if any there be, consisting of the (alleged) fact that they are part of a general scheme for the accomplishment of the illegal purpose to tie up the legi-time of the forced heirs of Leopold Weil and his wife. If, however, Leopold Weil and. those of his heirs who participated with him in the framing of those provisions were actuated by such purpose, the means adopted by them were, and are, wholly inadequate for its accomplishment, since he died within a few months thereafter leaving his entire estate under the control of his widow and -heirs, so that, Whilst he may have advised, and, during his life, may have enforced, the policy of buying property and holding it, they were left, at his death, free to do as they pleased in that respect.”
The opinion further calls attention to the law (Oiv. Code, art. 2882) which provides that;
“If a contract of partnership contains the stipulation that, in ease of the death of one of the partners, the partnership shall continue between the heirs of the deceased and the surviving partners, the stipulation shall be observed.”
From which it follows that, if Leopold Weil had formed a partnership with his sons, for a fixed period, the whole of his fortune would have been subject to the vicissitudes of the business, controlled by the majority of the partners, during that period, and the present plaintiff, with Mrs. Heinemann and the heirs of Mrs. Steeg (constituting the minority, in number, of his heirs), would have found their ease harder than it is, since the article of the Code which we nave quoted is as much a part of the law of this state as is that which makes a child the forced heir of his father, and plaintiff could not have obtained relief by selling out his interest in the partnership, as he may obtain it -by selling his stock in the defendant company. And, in that connection, the opinion further points out that plaintiff has the right to demand from his co-stockholders the value of his stock, as predicated upon the actual value of the property and good will of the company, and, if they are unwilling to buy upon that basis, he may sell to whom he pleases. Again, the opinion mentioned refers to the fact that Mrs. Heinemann and the heirs of *951 Mrs. Steeg are the owners of one-third of the stock of the company, and that article 7 of the charter provides that:
“It shall require a vote of, at least, three-fourths of the stock, so present or represented (at -a stockholders meeting), to elect directors, or to amend the charter, or to dissolve the corporation, or to do any other act at a stockholders meeting.”
So that, plaintiff’s brothers controlling only two-thirds, and not three-fourths, of the stock, he and the others, constituting the minority, occupy rather a strong position. Eor the reasons thus given, there was judgment, in the case referred to, rejecting the demands of Mrs. Steeg and her heirs and of plaintiff and Mrs. Heinemann, who, practically, joined in those demands. Mrs. Clara Weil Steeg, Wife, etc., v. Leopold Weil Building & Improvement Co., ante, p. 101, 52 South. 232.
It will hardly be denied, we imagine, that the heirs of Mrs. Steeg are concluded by the judgment so rendered, and, as the present plaintiff and Mrs. Heinemann were parties to that judgment, it follows that they also are concluded. Even if it were otherwise, however, we have found no reason to change our opinion with regard to the issue thus determined. To the contrary: A re-examination of the record has satisfied us that Leopold Weil formed the opinion, perhaps many years ago, that money invested in real estate in New Orleans could be made to pay a profit by improving, renting, and holding it; the rapid increase in value of all real estate, within the past few years, no doubt, constituting an important factor in his calculation. He therefore bought, improved, and rented, and, as he found the property increasing in value, he seldom sold. Jacob Weil testifies that the defendant company has 98 houses in one neighborhood, and, being asked:
“How many houses have you, altogether, about?”
1-Ie replied:
“That is more than I can say; I never counted them.”
It appears from other testimony that there are many more. It was not unnatural, under the circumstances, that Leopold Weil should have desired that the policy which he had found good should be adopted and continued by his heirs, nor was it surprising that he should have sought some means for the accomplishment, so far as it was legally possible, of that result. Not that he expected his children to devote their lives to the acquisition of real estate, merely that they might pass it on to a succeeding generation, but that, as a general business policy, they should invest what money they might have for investment in real estate, as safe property, likely to increase in value.
The plaintiff himself, as we have already noted, says:
“Father told me that he would like his real estate to stay intact after his death, and that there be no division among his heirs.”
And that is the strongest expression upon the subject that we find attributed to the deceased. Feeling as he did, he took legal advice, and no doubt learned that, whilst there was no way by which he could positively secure the carrying out of his views, after his death, it was practicable for him, acting within the law, to establish a corporation, to which he could transfer his property in exchange for stock, and he, perhaps, hoped that his heirs, upon his death, becoming equally interested in the corporation, as stockholders, would find it to their advantage to allow the property represented by such stock to remain under the one control, thereby securing a more economical and judicious administration. The best evidence that he did not expect, or intend, to tie up the property, beyond the control of his heirs, is to be found in the facts that he left them in control of the corporation to which the property had been transferred, and that he must have known that, if the directors of a corporation abuse their discretion, and fraudulently, or arbitrarily, refuse to pay a dividend, when *953 the condition of the corporation makes it their duty to do so, a court of equity, at the suit of a stockholder, will compel them to take such action. Beyond that, the evidence shows that the directors of the defendant company did not consider themselves bound to hold particular property when they considered that they could do better by selling it, for in July, 1005, they sold a piece of property for $3,400; in July, 1907, they sold another piece for $4,625; and in August, 1907, they sold two pieces, for $1,500 and $15,500 respectively. Plaintiff’s real ground of complaint, therefore (if he has any), is that defendant’s directors have reinvested its income .and have not declared dividends, though he is, evidently, also dissatisfied because he has not been given an office. All the stockholders in a corporation cannot, however, be given offices, and the failure of directors, under whose administration the corporation grows richer, year by year, to declare dividends, is no evidence either that the corporation was illegally organized or that it is badly managed. Even, therefore, if the issue decided in the suit brought by Mrs. Steeg were here presented as res nova, we should apply to it the conclusion reached in that suit. As to the other issues, here presented, which were not decided in the Steeg case, without inquiring whether they ought to be held bound, with respect thereto, by the judgment in that case, we are of opinion that the plaintiff and those who are joining in his demands have no standing to urge them, for the purposes of this suit: (1) Because they are es-topped; and (2) because, the defendant having acquired the status of a de facto corporation, the validty of its organization is not open to attack, at the suit of a private individual.
1. It will be remembered that plaintiff signed the charter of the defendant company, as one of the incorporators, because, as he says, he was afraid that, unless he did so, his father might cut him off from part of his inheritance; that is to say, he signed in order to secure to himself one-ninth (or, say, $8,000) of the disposable portion of the estate of his parents, which they were entirely at liberty to leave to whom they pleased. And thereafter he participated in the stockholders’ meetings and voted the stock for which he had paid, as an original subscriber, as, also, the shares which he'subsequently received by donation from his mother, being part of those which had been issued to his father, as an original subscriber and incorporator. Mrs. Steeg, through her husband, who held her power of attorney for that purpose, was also represented at the stockholders’ meetings, and voted her stock. Mrs. Heinemann does not seem to have been so represented; but she and the heirs of Mrs. Steeg are before the court asserting rights, as the owners of stock originally issued to Leopold Weil (who was the main instrument in the establishment of the corporation), and which they have acquired, by inheritance, from him and from his partner in community, and their position is no stronger than his would be, were he alive and assuming the position which they now occupy.
It will also be remembered that plaintiff’s brothers, as well as plaintiff himself, were induced to participate in the establishment of the defendant corporation by their father, and that they each paid in cash for the stock originally issued to them. It is true that they each paid only $100, but the principal involved is the same as though they had paid as much as their father. The charter was a contract, as between the incorporators, upon the faith of which they invested their money and have given their services, and neither their father, at whose instance it was entered into,, nor those who claim under him, ought now to be heard to attack it, to the prejudice of the other contracting parties, on the grounds here set up. Anderson v. Thompson, *955 51 La. Ann. 727, 25 South. 399. Many authorities hold that the rule thus stated applies even where the supposed corporation has not acquired a de facto status. Clark on Corporations (2d Ed.) pp. 92, 96; Marshall on Corporations, p. 136 (40); Cyc. vol. 10, p. 248.
2. Section 683 of the Revised Statutes, as amended by Act No. 125 of 1880, and Act No. 102 of 1882, authorizes the establishment of corporations, composed of not less than ■ six persons, for many specified purposes, and, among them:
“Eor constructing works of drainage, sewerage and land reclamation, * * * and, generally, for all works of public utility and advantage.”
Act No. 36 of 1888 authorizes not less than three persons, upon complying with tlhe provisions of the laws of the state governing corporations in general, to establish a corporation for the purpose “of carrying on any lawful business not otherwise specially provided for,” save stock jobbing, provided it have a capital of not less than $5,000. Section 2 requires that every corporation created under the authority of the act shall add the word “limited,” as the last word of its name, and shall, otherwise and in various ways, display that word.
Comparing the different provisions of the law thus quoted, it is evident that Act No. 36 of 1888 would be of doubtful authority for the establishment of a corporation already specially authorized, since, by its terms, it provides only for the creating of corporations for purposes “not otherwise specially provided for.” Hence, if one were called on to advise with reference to the establishment of a corporation for the purposes set forth in defendants’ charter — that is to say:
“To improve real estate; to build * * * houses for dwellings and other purposes; to * * * drain, reclaim and improve lands and to build thereon, and to render the same suitable for agricultural and residential purposes”
—one might very well doubt the propriety of proceeding under the act of 1888, since there was already special authority, under the pre-existing law, for the establishment of corporations “for constructing works of drainage, sewerage and land reclamation,” and general authority for the establishment of corporations for “all works of public utility and advantage.” In any event, if, under such circumstances, the parties in interest, acting by the advice of counsel, should undertake to establish a corporation such as the defendant company, under the section of the Revised Statutes which has been quoted, rather than under the act of 1888, it could not be said that the attempt might not be made in good faith, and if, the conditions of that section having been complied with, there should be a subsequent user of the corporate franchise, nothing more would be needed for the creation of a corporation de facto. Adding to what has been said that the existence' of a corporation de facto cannot be attacked in an action by a private individual, save under exceptional circumstances which are not here disclosed, and we have the rule which applies to this case. Cook on Stock & Stockholders (2d Ed.) p. 710, § 637; Elliott on Private Corporations, p. 24; Marshall on Corporations, p. 136, § 40; Clark on Corporations, p. 91 et seq., §§ 43, 44; Cyc. vol. 10, p. 244, Note la; State ex rel. Lannes v. Attorney General, 30 La. Ann. 954; In the Matter of Louisiana Savings Bank, 35 La. Ann. 199.
If, in its charter, the defendant lays claim to powers beyond and in excess of that authorized by the law under which it was, or purports to be, established, and exercises them, the claim is unfounded and the action unlawful; but the matter is one for the state, alone, to deal with. No one else can attack 'the validity of its organization on that account. Marshall on Corporations, p. Ill, § 34. For the reasons thus given, we are of opinion that the judge of the district court erred in decreeing the nullity of defendants’ charter, and it is, accordingly, ordered, ad *957 judged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the defendant the Leopold Weil Building & Improvement Company, rejecting the demands of the plaintiff, as also those of Mrs. Caroline Weil Heinemann, and dismissing this suit; the plaintiff to pay all costs.
BREAUX, C. J., dissents in part.
NICHOLLS, X, dissents.