(123 So. 116)

No. 29824.

SCREWMEN'S BENEV. ASS'N OF LOUISIANA v. MONTELEONE.

May 20, 1929.

M'Caleb & M'Caleb, of New Orleans, for appellant.

McCloskey & Benedict, of New Orleans, for appellee.

THOMPSON, J. The plaintiff agreed to sell, and the defendant agreed to purchase, the property situated at the corner of Exchange alley and Bienville street, this city. The price was $21,000 cash. When title was offered, the defendant refused to take it on the ground that the plaintiff was not the owner of the property; that the title was not good and merchantable, and was suggestive of litigation.

Thereupon this suit was filed to compel specific performance.

The answer of the defendant elaborates the reasons for declining to accept title.

On a trial, there was judgment ordering defendant to take title, and he appeals.

The plaintiff was incorporated by act passed before Abel Dreyfuss on December 16, 1876. Its object and purpose was declared to be to promote the welfare of its members by united and harmonious action on their part in all matters relating to their calling or occupation, and to afford mutual assistance to each other.

The corporation was a nonstock corporation. Membership was acquired by application and initiation upon payment of a certain fee, and the membership was retained by payment of monthly dues and the observance of a certain line of upright and moral conduct.

A board of officers was provided for, to be elected annually, and which board was required to meet monthly and to have control of the affairs of the corporation.

The first article of the charter limited the existence of the corporation to 20 years from December 16, 1876.

The property involved was acquired by the association on October 23, 1882. Although

the purchasing association was named in the act of sale as the Screwmen's Benevolent Association of New Orleans instead of the Screwmen's Benevolent Association of Louisiana, the evidence leaves no doubt but that the act of purchase was that of the plaintiff corporation.

It is shown that the plaintiff corporation took possession of the property and has occupied the same from the date of purchase down to the filing of the present suit.

There was another corporation chartered before a notary of this city bearing the same corporate name as that of the plaintiff, but the evidence shows that said corporation was composed of colored people, and had no connection with the plaintiff association. Of course, the colored association makes no pretense of claim, and could under.no circumstance claim the property here involved.

Admitting for the moment that the corporation ceased to exist as a de jure. corporation on December 16, 1896, by reason of the expiration of its charter, and conceding for the moment also that it was not, after said period, a de facto corporation, we do not agree with counsel that, when the charter expired, the property became the joint property of the members then living.

The association was legally incorporated, and was a separate and distinct intellectual being, different from all of the members who joined or became affiliated with it. All property acquired became the property of the association, and no individual member acquired any separate and independent ownership in the property so acquired.

■ When once a legal and valid existent corporation becomes the owner of property, such property remains the property of the corporation until disposed of in the manner provided by the charter or by the law.

■ Neither the stockholders of a stock corporation nor the members of a nonstock corporation ever become the owners in common of the property of such corporations.

Corporations legally organized are unlike, in this respect, unincorporated associations. C. C. 446.

In the case of National Oil Works v. Korn Bros., 164 La. 800, 114 So. 659, this court held that a corporation did not lose its identity because another corporation obtained ownership of all of its capital stock, and that, remaining a legal entity, the corporation continues to own its property until the same is transferred pursuant to law.

■ The same is true with respect to a corporation whose charter has expired, has been forfeited, or for any other cause has been dissolved.

Therefore the property here involved continued to be the property of the corporation separate and distinct from the members, and will remain so until disposed of or transferred in some manner provided by law.

The more serious question, and the one we find more difficult of solution, is whether, after the charter expired, the corporation maintained a status and character of a corporation de facto.

After December 16, 1896, the end of the period of existence as expressed in the charter, the membership continued to meet annually and elect officers as provided in the charter. The association also continued its monthly and weekly meetings, received and initiated members, collected dues, and made sick and benefit disbursements for the members.

The association occupied, as a place in which to hold its meetings, the property purchased by the association during its legal existence.

In other words, the association continued to function in the same manner and under the same name without interruption as though its

life had been legally extended after the expiration of the time limit of 20 years, as provided in the charter.

The precise question has never been brought before the courts of this state so far as we have been able to find, and counsel have not pointed out any cases in which the question was at issue.

There are cases, however, which bear some degree of analogy to the question presented.

It has been held that, where there has been a bona fide attempt to organize a corporation, and which was followed by actual user of the corporate franchise, the corporation acquires a de facto status, and the validity will not be inquired into at the suit of an individual; the matter being one for the consideration of the state. Weil v. Leopold Weil Bldg., etc., Co., 126 La. 938, 53 So. 56.

And in New Iberia Sugar Co. v. Lagarde, 130 La. 387, 58 So. 16, it was said that the law encourages and shares in the universal desire for the stability of business transactions, and very wisely provides that, when a corporation has attained an existence de facto, the regularity of its corporation shall not be questioned by indirect attacks by parties who are not concerned in the strictness of its incorporation.

"If the state acquiesces in the usurpation of corporate powers, individuals cannot complain."

It has likewise been held that, where a corporation has forfeited its corporate life by committing or omitting some act which the charter declares shall ipso facto forfeit the charter, the corporation continues to live as long as the state does not claim the forfeiture. Atchafalaya Bank v. Dawson, 13 La. 497.

In the case of Board of School Directors v. Meridith, 140 La. 275, 72 So. 960, it appears that the Pine Grove Academy of Caldwell parish was incorporated by an act of the Legislature in 1838 (Act No. 76 of 1838) and given a perpetual existence, but in 1860 (Act No. 195 of 1860) the Legislature reincorporated or amended the charter of the academy, but limited its life to 25 years. The corporation had acquired some property, and long after the charter expired, the school board brought suit to recover the property. While the question directly at issue involved the right to liquidate the affairs of the corporation, the court in its opinion declared that the corporation became defunct in the expiration of its charter in 1885, that the trustees had been dissolved, and there was no longer any corporate existence.

None of these authorities go directly to the point here raised, and, of course, cannot be considered controlling. They present a different state of facts.

In the last case cited it appears that the corporation had ceased to function altogether, and there was no one vested with authority to liquidate the affairs of the corporation.

In the other cases cited, the corporations continued to function under a color of authority—a charter voidable, but not absolutely illegal.

The question has been before the courts of other jurisdictions and the decisions have not been entirely uniform.

In 1 Fletcher, Cyclopedia Corporations, p. 576, it is stated that in some states corporations continuing to exercise corporate powers after the expiration of their charter have been recognized as corporations de facto on the ground that there is color of authority, and it has been held that no person except the state can question their corporate existence. See authorities cited in the note.

█ The same author, however, states that the weight of authority holds that a corpo-

ration is dissolved and ceases to exist when its charter expires, unless there is some statutory provision to the contrary, for there is no longer any law under which it can exist, and therefore it cannot, after expiration of its charter, be a corporation either de jure or de facto.

In 7 R. C. L. p. 66, the rule is stated to be that, where the charter fixes a definite time when its corporate life must end, when that date is reached the corporation is ipso facto dissolved without any direct action on the part of the state or its members. No corporate powers can thereafter be exercised by it except such as are given by statute for the purpose of winding up its affairs.

■ "And where a corporation continues to exercise, without authority, its corporate powers after the expiration of its charter by lapse of time, it does not thereby become a de facto corporation in so far as it may assert rights and powers as a corporation."

There are quite a number of cases cited in the note by the author, a majority of which appear to sustain the doctrine that, even though the corporation continues after the expiration of the charter, it does not obtain the legal status of a corporation de facto.

We have no statute in this state defining the status of a corporation whose charter has expired by limitation, but Act 26 of 1900 authorizes the appointment of a receiver to take charge of the property and liquidate the affairs of a corporation which has ceased to exist, on the application of any party in interest, or, in the absence of any such person, then on application of the Attorney General.

In the absence of any judicial precedent set by our own courts, we are disposed to follow the weight of authority established by the courts of other jurisdictions and to hold that, when a charter of a corporation expires by limitation of time as fixed in the charter. the corporation is thereby dissolved and ceases to exist, and is without any corporate power either de jure or de facto.

■ From which it follows that, after December 16, 1896, the present plaintiff's status was that of an unincorporated association, and without any of the attributes of a legal corporation. The property of the original corporation, however, continued to be the property of that corporation until sold in some manner provided by law.

We have not overlooked the authorities cited by the plaintiff contesting the right of the defendant to deny the existence of the corporation on the merits when not urged in limine.

The authorities are obviously not applicable to a case where there is, as in this case, a denial of the existence of a plaintiff having any authority either in law or in fact, and utterly without right to sue or stand in judgment.

For reasons assigned, the judgment appealed from is set aside, and the demand of the plaintiff is rejected at its cost.

O'NIELL, C. J., absent, takes no part.
ST. PAUL, J., dissents.