**(127 So. 624)**

**MORESI v. BURLEIGH et al.**

No. 29865.

March 5, 1930.

Rehearing Denied March 31, 1930.

Burke & Smith, of New Iberia, for appellants.

Porteus R. Burke and Weeks & Weeks, all of New Iberia, for appellee.

BRUNOT, J.

This is a suit for the specific performance of an option to buy 375 shares of the capital

stock of the Burleigh-Moresi Sugar Company, Inc., a corporation chartered under the laws of the state of Louisiana and domiciled in the parish of Iberia. The agreement is as follows:

"Jeanerette, La., Feb. 14, 1928.

"We, Robert Burleigh and Mrs. Robert Burleigh, hereby offer to sell, transfer and deliver to Demas Moresi at any time within four (4) months from that date, for the price of Twenty-Five thousand ($25,000.00) Dollars in cash, U. S. Currency all of the 375 shares of capital stock owned by us in the Burleigh-Moresi Sugar Company, Inc., which shares are represented by stock certificates No. 53 and 55 thereof; and for the price of One Hundred ($100.00) Dollars paid me in cash, we hereby sell, transfer and deliver to the said Demas Moresi the right and option to purchase our said capital stock under and in accordance with said offer and with the stipulations thereof, at any time, within Four Months from this date.

"It is agreed that the amount given as the price of said option herein granted, is not earnest money, but shall form part of the price of said stock sale if the option herein granted be exercised."

It is admitted that the plaintiff timely exercised the option granted in the foregoing agreement, and was ready to pay the price agreed upon, for the 375 shares of stock, but the defendants refused to transfer the stock and waived a formal tender of the price. Plaintiff thereupon filed this suit and made the Burleigh-Moresi Sugar Company, Inc., a nominal defendant. The prayer is for judgment against Mr. and Mrs. Robert Burleigh, ordering the specific performance of the contract within fifteen days from the date the judgment shall become final or upon the deposit of the purchase price of the stock in the registry of the court, that the judgment itself shall constitute the sale, transfer, and delivery of the stock, and that the proper officers of the Burleigh-Moresi Sugar Company, Inc., shall cancel upon its stock book certificates Nos. 53 and 55, representing 375 shares of its capital stock and shall issue to plaintiff, in lieu thereof, two certificates for corresponding numbers of shares of the stock of said corporation.

The defendants first excepted to the suit upon the ground that the contract sued upon is one in which earnest money was given, and that plaintiff had refused to accept the tender of twice the earnest. They further except upon the ground that the agreement is a unilateral contract. The answer is lengthy. To some extent it is an amplification of the grounds of exception followed by a recital of the purpose for which the Burleigh-Moresi Sugar Company, Inc., was organized; the destruction of its sugar factory by fire; the profitable adjustment of its fire loss with the insurers; and that the destruction by fire of its factory resulted ipso facto in the dissolution of the corporation, with the result that the assets of the corporation became the property of the stockholders in indivision.

Judge Simon has written a very creditable opinion in this case. We shall take the liberty of quoting it and adopting it as our own:

"Defendants contend firstly that the contract sued on is an innominate contract, without consideration, and that this is so because the $100 was to be returned to plaintiff upon the execution of the act of sale.

"Prior to Act 249 of 1910, option contracts were not originally recognized by our Civil Code. Because of this hiatus in our law, article 2462 of the R. C. C. was amended by said act, appending a second paragraph. It is evident that the continuity of thought which formerly existed between articles 2462 and

2463 was broken by said act, and matters foreign to provisions relative to promises to sell were interjected. But it in no wise changes the plain meaning of said provisions.

"Act 249 of 1910 was amended by Act 27 of 1920 only to the extent that options may be purchased for any consideration therein stated. It must therefore be readily conceded that the common-law precedents must govern, it having been lifted bodily into our law by said amendatory statutes.

■■ "An agreement to sell must be distinguished from an option contract. In the former, the contract binds the one to sell and the other to buy. In the latter, the option is simply an election to purchase, with a continuing offer to sell, during the time limits, supported by a consideration. The continuing offer to sell cannot be withdrawn before the expiration of the time agreed upon. If the option or right of election be exercised, it then no longer exists, but on the other hand an agreement to sell arises by virtue of such acceptance which may be specifically enforced.

■ "Reading the contract which controls the issues, there is but one conclusion, and that is that the $100 was paid for the option, and was the consideration therefor. The check in payment thereof (Document marked P 3) was collected by the defendants. It became their own and plaintiff could not have reclaimed it. The verbiage of the agreement, to wit, 'And for the price of $100.00 paid me in cash, we hereby sell, transfer and deliver to the said Damas Moresi the right and option to purchase, * * *' destroys the contention of defense counsel. Defendants admit to have received the amount and acknowledge that it is received by them for the option to purchase granted plaintiff. Such unambiguous and express provisions preclude any other interpretation.

■ "Defendants contend, however, that this is not consideration because if the option be exercised, the amount should be considered as part of the purchase price of the stock.

"In James on Option Contracts, § 322, after stating that a consideration is necessary, the paragraph continues: 'But it does not follow that because money paid by the optionee at the time of the execution of the option contract is to be applied to the price, such payment does not furnish consideration for the option contract. The application or credit of such payment on account of the purchase price is a secondary matter. The question is whether in the first instance the money was paid as a consideration for the option contract.'

"This same principle is expressly stated in 27 R. C. L. p. 338, as follows: 'But the fact that if a sale of the land afterwards follows the option the payment or consideration for the option is to be applied as part of the price of the land does not render it insufficient to support the option. Ide v. Leiser, 10 Mont. 5, 24 P. 695, 24 Am. St. Rep. 17.'

"The consideration was paid in cash, accepted by the defendants, and became theirs whether the option was exercised or not. The parties having bound themselves accordingly, and which is not rare, must so remain bound.

■ "However, even though consideration be totally lacking, which is clearly not the case here, the offer to sell was accepted before being withdrawn and by reason of its acceptance became a binding contract enforceable against either party.

"In Ide v. Leiser, 10 Mont. 5, 24 P. 695, 696, 24 Am. St. Rep. 20, the court, after saying that the option was without consideration, says: 'But upon acceptance and tender, was

not a contract completed? If one party offers to another to sell his property for a named price, and which the offer is unretracted the other accepts, tenders the money, and demands the property that is a sale. The proposition is elementary * * * every element of a contract was present, parties, subject matter, consideration, meeting of the minds, and mutuality, and as to the matter of mutuality we are now beyond the defect of option. We have simply an offer at a price, acceptance, payment or tender and demand. That this was a valid contract, we cannot for a moment doubt.'

"In 27 R. C. L. 339, it is stated as follows: 'Although an option is not binding as a contract for want of consideration, yet if the offer contained therein is not withdrawn, its acceptance within the time limited gives rise to a contract of sale, binding on the vendor, which cannot be affected by any subsequent attempt to withdraw the offer.' Pomeroy on Equity (2d Ed.) p. 4934; James on Option Contracts, p. 1217; Elliot on Contracts, p. 395; Murphy, Thompson & Co. v. Reed, 125 Ky. 585, 101 S. W. 964, 10 L. R. A. (N. S.) 195, 128 Am. St. Rep. 261; Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 67 L. R. A. 571, 110 Am. St. Rep. 963.

"It is to be observed that at no time prior to the acceptance by plaintiff, tender of the money, and demand for the stock, was the offer retracted by defendants. Be that as it may, the option contract was supported by a consideration valid in law, and remained so irrespective of the covenant that the sum would be applied to the purchase price in case of acceptance within the time limited.

"Defendants contend in the alternative that the $100 should be considered as 'earnest money.'

"It must be admitted that earnest money is an incident of a promise of sale. R. C. C.

art. 2463. The nature of earnest money is quite extensively discussed in Capo v. Bugdahl, 117 La. 992, 42 So. 478, the court holding earnest money to be simply an amount deposited as a guaranty—an amount given as a forfeit should the promise to purchase fail.

"In Nosacka v. McKenzie, 127 La. 1063, 54 So. 351, earnest money is again discussed and explained thoroughly. In that case, it is held that an amount deposited with a promise of sale is not to be presumed earnest money unless it clearly appears that such was the intent of the parties.

"It is to be observed that in the present contract, the parties solemnly declared and expressly covenanted that the amount was not earnest money.

"Earnest money is an incident which must arise from express stipulation. In either a sale or a promise of sale both parties are equally bound as to the subject-matter of their agreement. In a sale, the transfer of title is immediate; in a promise of sale the transfer of title is to be effected in the future, this latter however with the proviso, that, if earnest money is given, the parties may withdraw from the agreement.

"In an option contract, the optionee acquires no rights in the land or the subject-matter optioned. There is no transfer of title. It is simply a contract by which the owner grants the optionee the right to purchase the thing at a fixed price and within a fixed time. Davis v. Roseberry, 95 Kan. 411, 148 P. 629, 3 A. L. R. 566; Ide v. Leiser, 10 Mont. 5, 24 P. 695, 24 Am. St. Rep. 17.

"The option is a contract preliminary to an agreement to purchase. When exercised it ceases to exist, a new contract arising, which is enforceable against either party. There is no provision for the giving of earnest money with an option. The right acquired by an op-

tionee is an unqualified right to purchase if he so elect. He can release himself without a forfeit by simply failing to exercise the right acquired.

"Here the contract is purely one of option, and the parties expressly covenant that the amount paid is the consideration of the right to purchase, and expressly declare that the amount shall not be considered earnest money. Defendants are accordingly bound. The third and last contention of defendants is that the corporation by the loss of its sugar factory became ipso facto destroyed and that its assets were converted into cash, this from the insurance collected. In support of this contention they argue that the sole purpose of the corporation was the operation of the factory and because of its destruction is legally dissolved.

"A corporation is a separate and distinct entity, a legal being, and can only be dissolved, when once organized, in two ways: (1) By proceeding under section 29 of Act 267 of 1914; (2) at the instance of the state represented by the Attorney General or district attorney.

"Destruction of its property partly or wholly does not serve automatically as a dissolution.

"It is well recognized that the purpose and intent of the corporation must be ascertained solely from the articles of incorporation, and cannot be aided, varied, or contradicted by evidence outside of the instrument itself. Succession of Nicholson, 37 La. Ann. 346; Bayou Cook Navigation & Fisheries Co. Limited v. Doullut et al., 111 La. 517, 35 So. 729; Steeg v. Leopold Weil Bldg. & Imp. Co., 126 La. 101, 52 So. 232; Weil v. Leopold Weil Bldg. & Imp. Co., 126 La. 938, 53 So. 56.

"It was held in the case of Belton praying for appointment of a receiver, 47 La. Ann.

1614, 18 So. 642, 30 L. R. A. 648, that neither the want of officers by reason of failure to elect, or by death nor the burning of the will which it was the object of a corporation to carry on, will of themselves work a dissolution of the corporation.

"It is to be observed that the objects and purposes of the corporation is to raise and cultivate sugar cane, farm and agricultural products, to manufacture sugar, buy and sell cane and other products, to purchase lands, etc. This corporation had as its general purpose to perform such acts incident to the development of agricultural resources.

"The fire did not destroy all of its assets. Real estate and salvaged machinery remain. This can certainly be utilized in rebuilding a factory with the insurance collected. It is not for the court to say what shall or should be deemed expedient. The board of directors is the exclusive body to that end. The insurance money has been credited to the general fire of the corporation to be used for general corporation purposes.

"Furthermore, the agreement sued upon was executed prior to the fire. It can ill serve defendants as to what use the insurance money will be put. They agreed to accept a certain sum for their stock prior to the fire. Because the fire has possibly increased the value of their stock, this through insurance money collected, can they be heard to force a dissolution and much less to evade a legal and valid agreement legally accepted by the optionee and to which they are bound? I think not. For these reasons let there be judgment for plaintiff as prayed for."

For these reasons, the judgment appealed from is affirmed, at appellants' cost.

O'NIELL, C. J., concurs in the result.