BREAUX, O.'J.
Plaintiff sued the defendant to compel her to sign a deed of sale and to convey to him property which he claims to have bought from her.
The following is the written agreement upon which he sues;
“This is to certify that I have this day sold my house at No. 1904-6 St. Louis street, between Roman and Prieur streets, to Thomas Capo for the sum of twenty-three hundred dollars — ten per cent, two hundred-thirty dollars, paid — balance when act of sale is passed; 1905 taxes to be paid by vendor, also two per cent to agent.”
This instrument was signed by the defendant alone.
There is an instrument in writing immediately thereafter in which it is stated that on the 20th of November, 1905, the defendant appeared before a notary public, who declared, that the defendant executed the “foregoing contract of sale in my presence and in the presence of two witnesses, whose signatures are hereunto subscribed as such, and the said appearer, in the presence of said witnesses, hereupon acknowledges the execution of said instrument as her free act and deed.”
This instrument is signed by the notary and by the two witnesses, as declared by him; but it is not signed by the defendant.
Plaintiff avers that he has always been willing to take title to the property and to pay the balance of the purchase price; that the seller understood that the instrument in question did not contain a mere option to purchase, or that she was entering into an agreement from which either might recede at pleasure, subject only to the penalty of forfeiture on her part of double the amount deposited by him; that about three months after the agreement had been entered into she appeared before a notary for the purpose of authenticating the instrument, and in the act of asserted authentication she refers to the agreement as a contract of sale.
No cause of action was defendant’s ground of exception.
She immediately thereafter — reserving her exception — averred in her answer that she had entered into an agreement of sale of the property in question for the price mentioned; that the 10 per cent, of the purchase price mentioned in the instrument was given to her as earnest money, the balance to be paid at the date of sale.
She asked to be relieved of her promise to sell on her payment of double the amount of the earnest money.
The exception of no cause of action, which she had interposed, was overruled. It is *995 not urged anew on appeal, and presents no issue now before us.
The ease was tried on the merits.
The judge of the district court, in a carefully considered written opinion, decided for the defendant, and ordered the plaintiff to ■receive the amount deposited by the defendant, and condemned the defendant to pay the cost.
We state, if the convention was a sale, then the amount deposited should be credited on the price. If it was not a sale, but a promise of sale, then it must be considered in the light of a guaranty.
The agreement was not a sale. It was not intended in itself to transfer the property. •It remained in the defendant, who continued to have the real right in the property.
The agreement must be construed in accordance with the intention of the parties expressed at the time. Their convention is the law of the case. To quote a trite expression, “Conventio facit legem.”
It was a promise of sale. The purpose of the agreement, as we read it, was to make certain the contract to be completed at some future time.
It would require a rigid construction to give to a promise of sale the force and effect of a sale. There is a limit to this provision of our Code, art. 2463. The limit is made evident by the article following which reads:
“But if the promise to sell has been made with the giving of earnest money each of the contracting parties is at liberty to recede from the promise: to wit, he who has given earnest money by forfeiting it and he who has received it by returning it double.”
It is evident that this article qualifies the preceding article, and, if there is money deposited as a guaranty of the promise, it is subject to the provision of the latter article.
A promise to sell is equivalent to a sale in the sense that the promisee can obtain a judgment in case the promisor declines to carry out the agreement.
In addition, the pleadings properly treated the agreement as a promise of sale.
We state that the plaintiff treated the agreement as a promise of sale, for he states, in substance, in his petition that he desires to take title and to go into possession.
This allegation would hardly consist with the idea that the plaintiff is the owner. Moreover, originally the agreement on its face was not such as to bind the plaintiff. It was not signed by him. There was no written acceptance. There was no complete written evidence to give effect to this agreement as an act of sale.
Having arrived at the conclusion that the agreement was a promise of sale, we are led to inquire into the effect to be given to the deposit in guaranty of the promise.
The language of the Code furnishes a complete answer. If the promise to sell has been made with the giving of earnest money each of the contracting parties has, under certain conditions stated .in the article, the right to recede from the promise. Article 2463, Civ. Code.
Plaintiff cites the Girault Peucht Decision, 117 La. 275, 41 South. 572, with great confidence.
We have carefully read that decision, and have not found that it is a precedent in the case before us. That decision and those to which it refers adds strength to the position taken here.
The Roman civil law, referred to in argument, presents an inviting field which we must decline to enter, as we do not imagine that it would throw any light upon the subject.
The Roman law upon the subject is interesting, but in view of the many changes it is not at all conclusive.
We will, none the less, in passing, quote from a summary touching Roman Law:
It is intended by the French word “arrhes,” an amount which one of the parties hands to the other at the moment of the contract. *997 According to ancient usage of Rome, the •“arrhes” were given as a token of a concluded bargain, as an evidence on the price. Under Justinian it assumed another character. They were given, not to serve as proof of the contract, but to retain the faculty to abandon It on the condition of losing the “arrhes” if the contract was not carried out by the one by whom they were given, or to pay double if the contract was departed from by the promisor. The “arrhes” were then a forfeit, a sort of resolutory condition of the sale. Mourlon, vol. 3.
Plaintiff will gather neither strength nor comfort from the foregoing.
The word “arrhes” is used as near as it can be to the common-law term “earnest money.” In- our Civil Code it was translated from French into English by the use of the word “earnest money.”
Mourlon, vol. 3, p. 206, says: Where an agreement includes the words, “I promise to ■sell,” “I promise to buy,” the “arrhes” are presumed to be intended as a forfeit. The sale is made with the condition that each ■of the parties may decline to complete the contract if the one who gave the “arrhes” •elect to lose them or the one who receives them elects to pay double. The “arrhes” accompanying a promise of sale are presumed to be given as a forfeit unless there is contrary proof.
From the foregoing it results that there is ■a difference between a promise which equals a sale and the ordinary sale.
The full text from which we have made an excerpt of the foregoing is quite clear, and includes all promises of sales, such as the one before us.
Sales made under the form of a promise are treated briefly and clearly by Laurent, vol. 24, p. 38, whose text we freely translate as follows:
The one who proposes the withdrawal of a promise is permitted to prove that the “arrhes” were given on account of the price, but the onus of proof is with him, whilst the one who wishes to recant and recede has nothing to prove.
The plaintiff in the case before us has not introduced evidence to prove that the amount mentioned in the agreement was a cash installment on the price.
The facts and circumstances strongly point the other way.
Aubry and Rau extend the principle further than any of the other French commentators, for they express the opinion that the receipt of “arrhes” ex ratione legis changes an absolute sale to a promise of sale. Fuzier Hermann, continued by Carpentier, vol. 5, p. 223, No. 4.
The French doctors of law have considered that in case of doubt of the probable intention of the parties in interest the “arrhes” are to be considered as giving to each of the contracting parties the faculty of abandoning the agreement. Fuzier Hermann, vol. 4, p. 23, No. 2, citing Pothier, Duvergier, and others.
Before concluding we are led to say that it does appear that the amount must have been considered as forfeit money by the parties, for, if the plaintiff had elected not to complete the agreement, he certainly would not have recovered the amount he deposited. It could not have been retained as part of the price. It would have been retained by the vendor as an amount deposited as a guaranty of the promise which the plaintiff failed to make good.
The commentators and authors of an early date in France (Pothier, Domat, and others), prior to the enactment of the French Code, are not all in accord with the views expressed upon the subject by French commentators of a recent date. The latter followed the rule of the Code which left little room for interpretation on the subject in question. We are persuaded that the French commentators of a modern date under the dominion of their Code express the correct opinion.
*999 It is therefore ordered, adjudged, and decreed that the judgment appealed from is
affirmed.