(78 South. 731)

No. 21439.

NORTHCUT v. JOHNSON.

(April 1, 1918. Rehearing Denied May 27, 1918.)

*(Syllabus by the Court.)*

1. SALES &1(4)—SALE OF CATTLE—UNCERTAINTY—NUMBER—WEIGHT.

An agreement on the part of one party to sell to another 300 head of cattle, or as near that number as the first party could round up and deliver in the time specified, at a fixed price per pound, is not null for uncertainty of the number or weight of the cattle, notwithstanding the agreement was that the second party would accept whatever number of the cattle the first party might succeed in delivering at the scales, in his effort to deliver 300, in the time stipulated.

2. DAMAGES &81—LIQUIDATED DAMAGES—EARNEST MONEY.

A payment of $100 by a party agreeing to buy property by weight, at a price to exceed $8,000, must be regarded, in the absence of a definite agreement or understanding of the parties as to the purpose of the payment, as a forfeit or giving of earnest, and as fixing the liability or loss that either party might incur by receding from the agreement of sale.

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Action by William P. Northcut against Simon Johnson. Judgment for plaintiff, and defendant appeals. Judgment amended by reducing the amount to $100, and, as amended, affirmed.

Hundley & Hawthorn, of Alexandria, for appellant. John W. Lewis and Leon S. Haas, both of Opelousas, for appellee.

O'NIELL, J. This is an action for damages for violation of an alleged contract on the part of the defendant to sell to the plaintiff 300 head of cattle, at a stipulated price per pound.

Alleging that he had been deprived of a profit of $2,700 by the defendant's failure to deliver the cattle, the plaintiff prayed for judgment for that sum. And, alleging that he had paid $100 of the purchase price, he prayed, in the alternative, that is, in the event the court should hold that the contract was only a promise of sale and a giving of earnest, then that he should have judgment for twice the sum paid.

The defendant, in answer to the suit, admitted that he had agreed to sell to the plaintiff about 300 head of cattle at the price stated per pound, but denied that there was an agreement as to the number or weight or identity of the herd of cattle.

He alleged that the transaction was not a valid contract, because it was subject to the potestative condition that he was to sell only such cattle as he might see fit to deliver. He admitted having received from the plaintiff a check for $100, but alleged that he had returned it. He prayed that the plaintiff's demand be rejected, and, in the alternative, that is, if the court should hold that he had made a valid promise to sell, and had received earnest money, then that

the plaintiff should have judgment for only $100.

The plaintiff obtained judgment for $2,700, from which the defendant appeals.

### Opinion.

[1] From the admissions in the pleadings and from the testimony, we conclude that the agreement which the defendant failed to comply with was not null for uncertainty of the number or weight or identity of the cattle he promised to sell. The defendant had for sale more than 300 head of cattle, in several herds, at large on the prairie or in the woods. He drove 30 or 40 of them into a pasture, and exhibited them to the plaintiff as a fair sample of all that he had for sale, saying he could round up and would sell and deliver about 300. Having agreed upon the price per pound, the time and place of delivery, and the scales on which the cattle were to be weighed, the plaintiff consented to buy 300 head. . The defendant thereupon stated that, as the cattle had to be rounded up and driven a considerable distance to the place where they were to be weighed and delivered, he desired not·to be bound to deliver exactly 300 head. His objection was that, in his effort to gather together and deliver the 300 head of cattle in the time specified, he might not be able to get quite that many together, or might gather in a few more than 300. Hence it was agreed that the defendant would deliver at the scales, and the plaintiff would buy at the price stipulated per pound, the 300 head of cattle that the defendant had for sale, or as near that number as the defendant could deliver within the time specified.

Although the understanding and agreement was that the plaintiff would accept whatever number of the cattle the defendant would deliver, in his effort to deliver 300 in the time specified, the agreement was not subject to the potestative condition that the defendant should deliver only the number that he might see fit to deliver.

Such a contract as the parties made is provided for in article 2458 of the Civil Code, viz.:

"When goods, produce or other objects, are not sold in lump but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things so sold are at the risk of the seller, until they be weighed, counted or measured; but the buyer may require either the delivery of them, or damages if there be any, in case of non-execution of the contract."

The defendant does not contend that he was unable to deliver the cattle. On the contrary, he admits that he did not attempt to deliver any of them. His reason for declining to carry out his agreement was that he believed he could sell the cattle for a better price; and he thought he would be justified in receding from his agreement for the reasons stated in his answer to this suit, viz.: First, because he was advised and believed that his agreement was null for uncertainty of the number or weight or identity of the cattle he had promised to sell; and, second, because he was advised and believed that, if the transaction was a valid promise to sell, his liability for receding from the promise would be governed by article 2463 of the Civil Code, viz.:

"But, if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise, to wit, he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."

[2] The transaction between the plaintiff and defendant being a contract to sell, by weight, as near 300 head of cattle as the defendant could deliver within the time specified, the plaintiff would have had the option (according to article 2458 of the Civil Code), if earnest money was not paid, either to demand the delivery of the cattle, or to claim damages for violation of the contract. But, if the check for $100 that he gave to the defendant at the time of the transaction

was earnest money, to be forfeited in case of his failure to carry out the agreement, the defendant's liability for failing to carry out the agreement is limited to the same sum, since he has returned the check.

The defendant testified that the check which he had received from and returned to the plaintiff bore upon its face the memorandum, "Forfeit on about 300 cattle." The plaintiff produced and introduced in evidence on the trial of the case a check bearing the memorandum on its face, "Payment on about 300 cattle." And he testified that it was the same check which he had given to the defendant at the time of the transaction and which had been returned to him. The testimony of the plaintiff, identifying the check, was corroborated by a witness who testified that he saw the plaintiff write the check, and by another witness, who testified that he saw the check when it was taken from the envelope in which the defendant returned it. Both witnesses swore that the word "payment," not "forfeit," was used in the memorandum, "Payment on about 300 cattle."

The defendant and his father-in-law and his attorney swore that they had carefully inspected the check which the defendant had received from the plaintiff, and that the check which the plaintiff introduced in evidence was not the same. The defendant and his attorney testified that when the former consulted the latter as to the liability that might be incurred by receding from the promise of sale, the defendant brought the check to the attorney's office, and they observed and discussed the word "forfeit," in the memorandum on the check, "Forfeit on about 300 cattle." They said that the attorney then advised his client that the word "forfeit" on the check was proof that it was given as earnest, and that, if he receded from his agreement to sell the cattle and returned the check, his liability to the plain-

tiff would be only $100 if the court should hold that the agreement of sale was a valid contract. The attorney testified that he then had his stenographer to make two copies of the check, and that, when that was done, they compared the copies critically and collated each copy with the original. The attorney testified that he then made a third copy from the original check, using fictitious names in place of those of the maker and payee, and took that copy to the office of another lawyer, whom he consulted as to the liability that might be incurred if the payee of the check should recede from his promise to sell the cattle. The defendant's father-in-law testified that, on the defendant's return from the consultation with his attorney, he called the attention of the witness to the word "forfeit" on the check and explained its significance; and that he (the witness) suggested putting certain marks of identification upon the check, and that he saw the defendant thus mark it and place it into the envelope in which it was returned to the plaintiff. From those circumstances, the defendant and his witnesses testified positively that the memorandum on the check contained the word "forfeit," not "payment." The attorney's stenographer was not present at the trial, but it was admitted that he, a Mr. J. F. Berman, would swear that he made two copies of the check exhibited by the defendant to his attorney, collated them, and compared them with the original; that they were exact copies of the original, and that the two instruments produced by the defendant's attorney and filed in evidence were the identical copies made by him, the stenographer.

The two copies, said to have been made by the stenographer, and that which the defendant's attorney testified he made, all contain the memorandum, "Forfeit on about 300 cattle."

It is quite inconceivable that the defendant, his father-in-law, his attorney, and the

latter's stenographer could have been mistaken in their reading of the word which they deemed so important, on the check that they scrutinized so carefully. The check which the plaintiff introduced in evidence and swore was the original does not bear evidence of an erasure or alteration in the word "payment." It is therefore impossible to believe that the defendant altered the check. In fact, if he had altered it, the instrument produced by the plaintiff would contain the word "forfeit," not "payment." On the other hand, as is suggested on behalf of the defendant, it was possible for the plaintiff to write another check when he received the original from the defendant and observed the word "forfeit" on it. In support of the defendant's theory that the check introduced in evidence by the plaintiff was written after he got back the original from the defendant, our attention is directed to these circumstances: The defendant addressed the letter, in which he returned the check, to the plaintiff's post office address in Texas, and, at the same time, mailed a carbon copy of the letter, addressed to the plaintiff at Opelousas, La., where the plaintiff was awaiting the delivery of the cattle. The carbon copy of the letter was received by the plaintiff in Opelousas, and he consulted his attorney about the matter, several days before the letter containing the check was forwarded to Opelousas. The plaintiff had then told his attorney that the check showed on its face that it was given in part payment for the cattle, and he was advised of the importance of that fact, when he got the check back and saw again the memorandum on it. It appears also that the two witnesses who identified the check produced by the plaintiff at the trial had been interviewed by the plaintiff, and had said that the original check showed on its face that it was given in part payment, before the plaintiff got the check back from the defendant. There is no reason why the witness who saw the plaintiff write the original check should have observed and remembered that the word "payment," not "forfeit," was used in the memorandum on the check.

However unwilling we are to believe that the check introduced in evidence by the plaintiff is not the same that he gave to the defendant, we are equally reluctant to believe that the defendant and his witnesses committed perjury. As it is quite impossible for them to have been mistaken in their observation of the word "forfeit" on the check, there is a preponderance of the evidence on that question in favor of the defendant.

Avoiding the embarrassing question whether the memorandum on the original check contained the word "payment" or the word "forfeit," we would be convinced, if we should ignore the memorandum on the check, that it was intended to represent, and must be regarded as, earnest money, to have been forfeited in case the plaintiff should have failed in his agreement to buy the cattle. Our reasons for that opinion, aside from any memorandum on the check, are: First, that the amount of the check was such a small proportion of the price intended eventually to be paid; second, that no agreement or demand or suggestion was made for a cash payment on the purchase price; and, third, that the plaintiff's understanding when he voluntarily gave the check, as he admitted in his testimony, was merely that it would "bind the trade." The plaintiff acknowledged in his petition and in his testimony that the total price that he would have paid for the 300 head of cattle at the rate agreed upon would have exceeded $8,000. A payment of only $100, to bind a transaction involving $8,000, must be regarded, in the absence of a definite understanding of the parties as to the purpose of the payment, as a payment of earnest. See Capo v. Bugdahl, 117 La. 992, 42 South. 478; Smith v. Hussey,

119 La. 32, 43 South. 902; Legier v. Braughn, 123 La. 463, 49 South. 22. Our conclusion is that, by giving the check of $100, the plaintiff fixed at that sum the liability or loss that either party might incur by receding from the agreement.

The judgment appealed from is amended by reducing the amount to $100, and, as amended, it is affirmed. The defendant is to pay the costs of the district court; the plaintiff to pay the costs of appeal.