## YATES v. BATTEFORD

---

(January 11, 1932. Opinion and Decree.)
(February 15, 1932. Rehearing Refused.)
(Decree amended, see attached opinion.)

---

Neil A. Armstrong, Jr., and Emmet Alpha, of New Orleans, attorneys for plaintiff, appellee.

R. A. Tichenor and Alex W. Swords, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. Plaintiff, Yates, agreed to buy from defendant, Batteford, certain property, and the parties executed an agreement which, except for certain provisions having no bearing on the issues now involved, reads as follows:

"Agreement of Sale
"Frank P. Batteford to H. P. Yates

"It is hereby agreed by and between Frank P. Batteford, of the city of New Orleans, Party of the first part, and H. P. Yates, also of the city of New Orleans, party of the second part;—

"That the said party of the first part, his heirs or assigns for and in consideration of the price and sum of $2000.00, and the conditions hereinafter set forth will sell and transfer to said party of the second part with full warranty of title the following described property, to-wit: * * *

"And which said sum of two thousand dollars is to be paid in the following manner to-wit;—

"The sum of $400.00 cash, balance $1,600.00 represented by a promissory note drawn by party of the second part to the order of party of the first part, dated the date hereof and payable in monthly installments of $10.00 per month;—first installment payable 30 days from the date of these presents and the remaining installments are payable on the 24th day of each month thereafter together with interest at the rate of 7% per annum from date hereof until paid and of all taxes, assessments, insurance policies and impositions that may be levied upon said property subsequent to November 24, 1926. Said note

being payable at Hibernia Bank & Trust Co., D. H. Holmes Branch, this city, interest on said note being payable semiannually.

"Upon the payment by the party of the second part of ⅓ of the total amount due under this agreement, at the time and in the manner provided above, the said party of the first part covenants and agrees to execute a Notarial act of sale of the said property to the party of the second part, his heirs or assigns;—the unpaid balance of the purchase price to be represented by a promissory note bearing interest at 7% per annum, secured by a vendor's lien and all accessory privileges.

"It is expressly understood and agreed between the parties hereto that time is to be the essence of this contract, and that if the said party of the second part shall at any time fail to pay three consecutive installments or be in arrears to the amount of three installments as they fall due, then all unpaid installments shall become due and payable at once. Upon the failure of the party of the second part to pay the whole unpaid amount within 30 days from said default, then all the rights and interests of the said party of the second part under this agreement, at the option of the party of the first part, shall at once cease and 25% of all payments made by the said party of the second part shall become forfeited to the party of the first part as liquidated damages and all obligations to sell under this act shall terminate.

"It is further agreed that no stipulation herein shall be construed as giving to the party of the second part any right of ownership (contingent or otherwise) in and to the said property until the payments herein provided for shall amount to the sum of $670.00, at which time this agreement shall then have the character of that referred to in Article 2456 of the Civil Code of Louisiana and then either party may require a specific performance of this agreement of sale and the purchaser, at the option of the vendor, shall be personally liable for the unpaid balance of the purchase price. * * *

"Notarial act of sale shall be passed before R. A. Tichenor, Jr., N. P., at the expense of the party of the second part.

"In witness whereof we have signed and executed these presents at the City of New Orleans on the 24th day of September, 1927.

"[Signed] F. P. Batteford
"H. P. Yates.

"Witnesses:
"[Signed] W. S. Armstrong,
"I. Bethancourt."

Upon the execution of the contract, the sum of $400 was paid by Yates. Though there is some dispute as to whether Batteford himself received the said money, we find it unnecessary to determine this issue, and shall, in our discussion of the more important questions, treat that payment as having been made directly to Batteford.

Thereafter, in addition to the $400 paid when the contract was signed, Yates complied with his monthly obligation, and for sixteen months paid an additional sum of $10 each month, and then, no longer desiring the property, and having reached the conclusion that the contract was unenforceable, he discontinued making the installment payments, and brought this suit for the return to him of the amounts so paid, with interest. He also asks for the annulment of the contract and for the cancellation and return to him of the note for $1,600 referred to in the contract. By supplemental petition he alleges that, in addition to the sum of $560 thus paid, he has, in accordance with the contract, also paid interest on the $1,600 note amounting to $109.21, and a portion of taxes due on the property amounting to $3.85.

Batteford denies that the contract is a nullity, and, by way of reconvention, asks that the contract be specifically enforced, and seeks judgment against Yates for the balance.

In the district court, judgment was rendered for Yates ordering the cancellation and return of the note and the return, with interest, of the amount paid, and

annulling the contract as being void and unenforceable. Batteford has appealed.

The gravamen of plaintiff's complaint is found in article 6 of the petition, which reads as follows:

"That the reason said contract is null and void in law, is because it binds petitioner to the performance of stipulations, and leaves the defendant and said property utterly unbound, until petitioner should have paid $10 per month for a period of twenty-seven months." (Contractual provision commencing with the words "no stipulation herein shall be construed," etc.)

Plaintiff thus contends that Batteford, the owner of the property, and the property itself were both "utterly unbound," and he argues that, since one party to the contract could not be held, the agreement was a nudum pactum, and no one was bound thereby. It is unnecessary to do more than to state that the conclusion drawn is sound; that is that, where one of the parties is not bound, either personally or through a claim enforceable against his property, the contract is unenforceable against the other, and we therefore hasten to a consideration of the premise from which the conclusion is drawn, that premise being that neither Batteford nor his property was in any way bound by the agreement.

That the property itself was unbound and would remain unbound until the sum of $670 had been paid is evident from a mere reading of the agreement. It is very plain that the parties did not intend that any right in the property itself should pass until $670 had been paid, because it was expressly stipulated that no right of ownership (either contingent or otherwise) should come into existence until the payments amounted to that sum, and that thereafter, and only thereafter, the agreement should have the character of that referred to in article 2456 of the Civil Code. That article reads as follows:

"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

The property then, as we have said, was not bound, and no right to specific performance came into existence. But is Yates correct in his above-referred to allegation that Batteford himself was unbound? Could he (defendant) have receded from the contract at will? Had he decided to do so, would Yates have had any rights against him?

The right to specific performance is not the only one which may result where contracts looking to the sale and purchase of real estate are involved. Another right is the one which, under Civil Code, art. 2463, comes into existence where a promise to sell has been accepted and earnest money has been given. In such case no absolute right to the realty itself comes into existence, but the personal obligation to forfeit the earnest money on the one hand, or to return double on the other, furnishes good consideration and makes the contract binding on both parties, without regard to whether there exists the right to enforce transfer of title.

The agreement readily divides itself into two parts. Under the first, prior to the time at which $670 was to have been paid, it was an accepted offer to sell, accompanied by the giving of earnest, whereas, under the second part, if $670 had been paid, it would have become an actual agreement of sale, which, under many decisions of our courts, is equivalent to a sale in that specific performance thereof may be decreed.

True, our Code says (article 2462) that a promise of sale amounts to a sale; but by a settled jurisprudence, this means no more than that the contract is susceptible of specific performance. Girault v. Feucht, 117 La. 276, 41 So. 572. See, also, Bennett v. Fuller, 29 La. Ann. 663, and McDonald v. Aubert, 17 La. 450.

That the deposit of $400 and the subsequent installments are not in the contract referred to as being in part earnest money is of no importance, for, in McCain v. Hicks, 150 La. 43, 90 So. 506, is found the following:

"It is immaterial that the word 'earnest' is not used in the agreement under consideration in this case. The contract being sued on being a promise of sale, and not a sale, the money advanced by plaintiffs to bind it was earnest, under the law, whether the parties so designated it or not, and, in case of a promise to sell, 'earnest,' or the sum of money advanced as a guaranty of the execution of the contract means that either of the parties may withdraw from the contract, the one by forfeiture, the other by paying double, and earnest money is paid to enable the contractants to retain the privilege of withdrawing from the contract."

Nor do we consider that the situation is altered by the fact that the contract provides for the forfeiture, not of the whole amount paid up to the time of forfeiture, but only of 25 per cent thereof.

The parties may make their own contracts, and, however unusual they may be, they form the law between them, and should be enforced so long as they do not contravene good morals or public policy. In Salles v. Stafford, Derbes & Roy, Inc., 173 La. 361, 137 So. 62, 63, the Supreme Court said:

"All things not forbidden by law legally become the subject of or the motive for contracts. Civ. Code, art. 1764. And agreements legally entered into have the effect of laws on those who have formed them. They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed in good faith. Civ. Code, art. 1901. When the intention of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision which the parties had no right to modify or renounce. Civ. Code, art. 1963.
"The policy of the law is that all men of lawful age and competent understanding shall have the utmost liberty of contracting, and their contracts, when freely and voluntarily made, are not lightly to be interfered with by the courts. Hence the contract herein submitted for interpretation must be held sacred and be judicially enforced, unless the intent of the parties is wholly unascertainable or is clearly unlawful."

In Stewart, Hyde & Co. v. Buard et al., 23 La. Ann. 201, the Supreme Court maintained the validity of a contract sought to be set aside as having been improvidently entered into, and said:

"The contract may have been rash, but it was not unlawful. * * *"

Here the parties agreed between themselves that Yates should pay to Batteford $400 cash and 10 per cent per month for 27 months, and that during those 27 months Yates might recede from the contract by surrendering 25 per cent of the amounts paid up to the time that he might elect to recede. That 25 per cent so paid was earnest money. What matters it that the parties may have called it liquidated damages? Does not the Supreme Court, in Legier v. Braughn, 123 La. on page 466, 49 So. 22, refer to forfeited earnest money as "damages for the breach of a promise of sale"? Is it of any importance that the contract did not reciprocally stipulate that the prospective vendor might recede from his promise to sell by returning the total

amount paid, together with 25 per cent thereof? We think not. Rarely, indeed, in contracts looking to the sale of realty in connection with which earnest is given, is it stipulated that the prospective purchaser may recede by forfeiting the earnest money paid and that the prospective vendor may recede by returning double. The codal provision (article 2463) writes that reciprocal obligation into the contract. Usually the stipulation merely provides for the deposit by the purchaser of the sum agreed upon. That is all that is necessary.

Here the parties provided for the deposit and for the surrender by one of 25 per cent of that deposit in case of default on his part. The codal article wrote into the contract the obligation on the part of the other to forfeit, in case of his default, a like sum, to-wit, 25 per cent of the amount of the deposit.

Nor do we deem it important that, in addition to the original deposit, further installments were provided for. Of each installment paid, 25 per cent became additional earnest money, and, in event of default by either party, the damages which the defaulting party owed to the other were, as each installment was paid increased by the sum of $2.50.

It is true that, out of the $400 originally deposited, only $100 was earnest money, and that, out of each subsequently paid $10 installment, only $2.50 constituted additional earnest money; but the fact that, in addition to the earnest money provided for under the contract, the purchaser chose to agree to deposit with the vendor an additional sum and to pay interest on his note and to assist in the payment of taxes, does not, in our judgment invalidate an otherwise legal contract. All money over and above the earnest stipulated for, except the interest paid and the taxes, was merely deposited to await the consummation of the transaction. If, through fault of either party, the contract was never consummated, then such excess deposit was to be returned to the purchaser.

If the contract had not contained the stipulation which, in effect, prevented the right to specific performance from coming into existence until $670 was paid, then such amount as was deposited over and above the original earnest money might have been considered as a payment on account of the purchase price, and might, of itself, have created the right to specific performance. See McCain v. Hicks, supra.

In Middleton v. Natal, 9 La. App. 596, 121 So. 681, 682, is found a situation in some particulars resembling that which confronts us here, and, while it is true that in that case we said: "True enough, he [the seller] was in no manner bound to deliver the property to defendant, unless and until the note was paid, but in the meantime, and pending that payment, defendant was absolutely bound to retain title to and possession of the property, so that he would be in position to deliver title and possession thereof upon payment of the note, * * *" and true it is that the language above quoted would, were it not followed by a qualifying clause, indicate that such a contract creates a right in and to the property itself, nevertheless we find immediately following the language just above quoted the alternative obligation, "or to respond in damages in the event of his failure to do so." So that, in order that a contract may create reciprocal rights and obligations—in other words, may be mutual—it is not essential that it give to one of the parties the right to enforce specific performance of the obligation to deliver title. All that is necessary is that an agreement of sale be balanced by an agreement of purchase, or that a promise to sell

be balanced by a promise to buy. Here we find a promise to sell unenforceable by specific performance, but not void because unenforceable by that particular means, but, on the contrary, absolutely effective and binding personally because balanced by the reciprocal personal obligations of the two parties—the one to forfeit the deposit and the other to return double the amount thereof.

The parties must have meant something by their contract. It cannot be presumed that they intended solemnly to enter into a contract which would have no legal effect. We must seek to arrive at the intention of the parties, and must attempt to find in that intention a purpose enforceable at law.

We are of the opinion, then, that the contract, as entered into between the parties, was legal and binding, and that it created in each the rights which spring from an agreement to sell, coupled with the giving of earnest. It follows then, since Yates refused to continue making the payments required by the contract, that he was in default and forfeited such amount as had up to that time been deposited as earnest; in other words, 25 per cent of the $560, which at that time had been paid. The balance, however, should be returned by the depositary to plaintiff. But he is not entitled to interest on the deposit which he made, since we find in the contract no stipulation to that effect.

We do not think that it can be said that Yates assumed the obligations of an owner. Batteford had the full right to require such stipulations as were satisfactory to him, and among his requirements were those with regard to interest and to the payment of such sum as he might be required himself to pay for taxes. In consideration for those obligations assumed by

Yates, Batteford, by accepting earnest money, bound himself either to hold the property in order to deliver title, or to return the earnest money and forfeit a like amount. Both parties were thus bound; if not for identical amounts, at least for cash, and for an amount sufficient to constitute real consideration and to prevent our holding the agreement to be a nudum pactum.

"The question of adequacy of the consideration is a matter for the parties themselves to determine." Blanchard v. Haber, 166 La. 1014, 1018, 118 So. 117, 119.

The interest paid on the note and the amount paid to defendant for taxes due on that part of defendant's property which was the subject of the agreement were amounts paid because plaintiff consented thereto because he felt sufficiently interested in obtaining a contract looking to the purchase of the property to agree that, pending his completing his payment, he would pay the said interest and the said taxes. He well knew that, if the transaction was never consummated, he would lose the interest and the taxes, which he was to pay pending completion of the transaction, but whether he made a wise bargain does not concern us. His agreement was not against good morals, and was not against public policy, and should be enforced. In Blanchard v. Haber, supra, we find an interesting case, in which Blanchard, who operated a large dental office, employed Haber to work as a dentist in the office; the agreement being for a stipulated monthly compensation, with the right in either party to cancel on giving thirty days' notice. Had the contract contained no other stipulations, it would have been entirely binding and valid, but it also contained a stipulation that, if either party should cancel the contract, Haber, for a period of ten years, should not have the

right to practice dentistry within a distance of five squares in any direction from the office operated by Blanchard. The court held that Blanchard was not entitled to an injunction preventing Haber from practicing dentistry within the limits prescribed because there was no consideration given to Haber for his agreement to refrain from so practicing in that district.

It is true that, so long as Haber worked for Blanchard, he received regular compensation, but that compensation was given for services rendered, and could not be said to be consideration for the agreement on his part to refrain from practicing dentistry in the prescribed area in the event of termination of the contract.

Here we find no such situation. The property owner, it is true, could terminate the contract at any time that he might see fit, but, if he did so, he immediately took on his shoulders the obligation of returning double the amount of the deposit. Thus it cannot be said that he had the right to declare the contract at an end and to obtain the benefit of the taxes and interest already paid him, without having given consideration therefor, because the consideration which he would be required to give would be the return of the earnest money, plus a like amount, or, in other words, as it is stated in the code, to return the double.

In a plea of estoppel filed in this court, Yates maintains that, since Batteford in his answer contended that the contract should be specifically enforced, and that Yates should be ordered to pay the total remaining unpaid portion of the purchase price, Batteford has thereby deprived himself of the right to retain the earnest money paid, if we come, as we have, to the conclusion that the contract is a promise of sale with the giving of earnest.

We do not believe that any estoppel has been created by Batteford's answer. Many times parties have asked for specific performance, but have been allowed to recover only earnest money. It would, indeed, be a harsh doctrine which would require one, who is a party to the contract looking to the sale of realty, and who believes that the contract is specifically enforceable, to lose his right to earnest money solely because of his belief in his right to specific performance. The other party here has been led into no false position, and has made no sacrifice of any right as a result of defendant's contention for the whole amount of the stipulated purchase price.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be and it is amended so as to read as follows:

It is ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, H. P. Yates, and against the defendant, Frank P. Batteford, in the full sum of $373.30, with legal interest thereon from judicial demand until paid, and canceling the said note for $1,600 and canceling the contract of September 24, 1927, plaintiff and appellee to pay costs of this appeal; all other costs to be paid by defendant.

---

ON APPLICATION FOR REHEARING

PER CURIAM. Due to a miscalculation on our part the decree rendered by us, among other things, condemned Batteford, defendant, to pay to Yates, plaintiff, the sum of $373.30 with interest, etc. The amount should have been $420 with interest, etc., instead of $373.30.

It is therefore ordered, adjudged, and decreed that the decree rendered by us on January 11, 1932, be and it is amended so as to correct the figures $373.30 as they appear in the original decree to read $420.

The rehearing requested is refused.