106 So.2d 306

Louis D. HAEUSER

v.

Mrs. Rosalie (or Lilly) CASTROGIOVANNI,
Widow of Lucas J. SCHIRO, et al.

No. 43437.

March 17, 1958.

On Rehearing Nov. 10, 1958.

Harry P. Gamble, Jr., Paul J. Ganucheau, Lautenschlaeger & Gamble, Gamble. & Gamble, New Orleans, for defendants-appellants.

Montgomery, Barnett, Brown & Read, Walter M. Barnett, Albert Mintz, New Orleans, for plaintiff-appellee.

PONDER, Justice.

The defendants are appealing from a judgment condemning them to specifically perform a contract for the transfer of real estate. This is the fourth suit that the plaintiff has brought under an option to sell contained in a lease contract entered into between him and the defendants' husband and father, Lucas J. Schiro.

On January 2, 1951, Lucas J. Schiro leased to plaintiff the premises located at 5000 Jefferson Highway, known as the Schiro property, measuring 237 foot front on the Jefferson Highway by a depth of 597 foot, for a primary term of five years, commencing on February 1, 1951 and ending January 31, 1956, for a consideration of $500 monthly to be paid in advance to the real estate agency of D. Marsiglia, Inc. In this lease it is provided that the lessee cannot rent or sub-let the premises to anyone without the *written* consent of the lessor. The lessee was granted an option to purchase the property, which is set out in the lease as follows, viz.:

"Lessee is hereby given the option of purchasing this property at any time during the period commencing August 1, 1953 and ending August 1, 1958 providing this property is under the present lease agreement at the time this option is exercised."

It appears in this option that no provision is made therein as to the terms under which the option is to be exercised; however, on June 27, 1951 the lessor addressed a letter to the lessee calling his attention to the fact that they failed to put in the option the price to be paid for the property, stating that it is distinctly understood that the price is $55,000 cash and, if the option is exercised, 10% deposit must be made to the real

estate agent, D. Marsiglia, Inc. In this letter lessor granted the lessee the right to immediately exercise the option provided he did so not later than April 1, 1952. This right was extended on June 11, 1952 for a period of ninety days and it was provided that if it was not exercised within that time the terms and conditions of the option would revert back to the terms and conditions contained in the original lease, the sale price being $55,000.

The first suit brought by the plaintiff on September 13, 1954 was for specific performance wherein the plaintiff alleged:

"2.

"That on the dates set out in the documents numbered 'Plaintiff I, II and III,' which documents are attached hereto and made part hereof, the same as if copied in extenso, your petitioner and the defendant entered into an agreement whereby Louis D. Haeuser agreed to buy from Lucas J. Schiro, who agreed to sell, the following described property for the price and sum of Fifty-five Thousand Dollars:

"5000 Jefferson Highway, known as the Schiro property, measuring 237' front on the Jefferson Highway by a depth of 597'."

"3.

"Petitioner avers that, pursuant to said agreement, he deposited $5,500.00, which is 10% of the purchase price,

with Marsiglia Realty, Inc., the said real estate agent acting for and on behalf of the seller, Schiro. The said agent's receipt, marked 'Plaintiff IV' is attached hereto and made part hereof."

"4.

"Petitioner further avers that he has been ready, willing and able to carry out his part of the agreement by paying the balance of the purchase price, to-wit $49,500.00 and he has made demand upon the defendant herein to execute a formal act of sale of the said property, but without avail."

The deposit of 10% of the purchase price was made on August 21, 1954 to Marsiglia. Schiro interposed an exception of no right or cause of action which was maintained by the district judge. The judge in his written opinion maintaining this exception stated:

"The only demand that plaintiff makes in this case is one for specific performance. It is based upon an alleged acceptance of an offer to sell contained in an option to purchase which was part of a lease between the parties. The option stated no price and no method of acceptance. In subsequent correspondence, defendant stated that the price was $55,000 cash. He also made other offers to sell in which he stated that if the option was exercised a 10% deposit, in cash, must be

made with D. Marsiglia, Inc., agent representing the vendor. These offers expired without acceptance within the stipulated periods. Subsequently plaintiff attempted to accept the option which was part of the lease by depositing 10% of the purchase price of $55,000 with D. Marsiglia, Inc., Agent.

"It is not necessary to decide whether this method of acceptance of the price of $55,000 cash became part of of the option stipulated in the lease. If it did become part of the option stipulated in the lease, the deposit was earnest money, and plaintiff is not entitled to specific performance. If these conditions did not become part of the option stipulated in the lease, then, of course, there was no acceptance of the option, and plaintiff is likewise not entitled to specific performance. Under no possible theory is plaintiff entitled to specific performance under the facts stated in the petition and supplemental petition. This is all I have decided in this case.

"The exception of no cause of action must be maintained and the suit must be dismissed. If plaintiff is entitled to any other kind of relief on the same state of facts, or to the same or any other relief on any other state of facts, that must be the basis of a new suit."

The plaintiff brought a second suit seeking a declaratory judgment, which demand was rejected by the lower court. The third suit was for specific performance which was non-suited and the present suit is for specific performance after a demand was made February 25, 1955 on Schiro to transfer the property to the plaintiff upon the payment of $55,000.

There was no provision in the option as to the amount to be paid for the property and the plaintiff must necessarily rely on the letters written by Schiro in November of 1951 and June of 1952 which were attached to the first specific performance suit filed by the plaintiff and alleged in plaintiff's petition to be Plaintiff's exhibits Nos. 2 and 3 and made part of the petition as if copied in extenso.

It is to be noted that in that suit the plaintiff averred that the agreement in the original lease-option required the deposit of 10% of the amount to be paid for the property. Now the plaintiff comes in seeking to establish the purchase price of the property, which is silent in the lease-option, by these very letters from Schiro. Plaintiff cannot come into this Court as he did in the first suit and say that a deposit was to be made under the agreement with Schiro and in a subsequent suit take an opposite position. He cannot be permitted to blow hot and cold with the courts.

It is to be noted that the first suit for specific performance was filed on Septem-

.ber 13, 1954, long after the option given in the last letter of Schiro, dated June 11, 1952, giving the plaintiff an extension of ninety days within which to exercise the option, had expired, this being the same letter that the plaintiff must rely on for establishing the purchase price. In other words, in the first suit the plaintiff was exercising his option contained in the original lease and could not have been exercising it under the letters written by Schiro because the time for the exercise of the option under those letters had expired approximately some two years.

Plaintiff interpreted the contract as requiring the deposit of 10%, the usual amount for earnest money, by his very act in depositing it with the real estate agent.

■■ It was recognized by this Court in the case of Ducuy v. Falgoust, 228 La. 533, 83 So.2d 118 that where earnest money is given the parties have no right to demand specific performance, being relegated entirely to the forfeiture of the deposit or its double. It is established that under Article 2463 that all deposits are presumed to be earnest in the absence of a contrary intention. Collins v. Desmaret, 45 La.Ann. 108, 12 So. 121; Capo v. Bugdahl, 117 La. 992, 42 So. 478; Legier v. Braughn, 123 La. 463, 49 So. 22; Maloney v. Aschaffenburg, 143 La. 509, 78 So. 761; Terrebonne v. Cheramie, 151 La. 929, 92 So. 388; Bermuda Stock Farms Co. v. Gilliland Oil Co., 155 La. 949, 99 So. 708; Breaux v. Burkenstock,

165 La. 266, 115 So. 482; Buckman v. Stafford, Derbes & Roy, 167 La. 540, 119 So. 701; Livingston v. Southport Mill, 173 La. 120, 136 So. 289. Where earnest is given the parties have no right to demand specific performance. Terrebonne v. Cheramie, 151 La. 929, 92 So. 388 and Breaux v. Burkenstock, 165 La. 266, 115 So. 482.

Moreover, the plaintiff did not appeal from the judgment rendered in his first suit wherein he was denied specific performance.

The evidence shows that the plaintiff sublet the premises to a corporation known as National Lumber and Demolishing without the knowledge or consent of Schiro or the defendants herein. The plaintiff takes the position that the stock of the corporation is owned by him and his family and that the subletting of the premises was not therefore in violation of his contract. We cannot approve the plaintiff's position because the corporation is a separate entity and furthermore it might have the effect of limiting the plaintiff's liability in event of breach of the contract or damages that might be occasioned to the property through the negligence of the plaintiff. The lease provided that it could not be sublet without the *written* consent of the lessor and certainly no such written consent has been given.

For the reasons assigned, the judgment of the lower court is reversed and set aside and plaintiff's suit is dismissed at his cost.

FOURNET, C. J., concurs.

HAMITER, HAWTHORNE and SIMON, JJ., concur in the decree.

On Rehearing

SIMON, Justice.

The facts of this case have been fully stated in our original opinion and need not be repeated. We held originally that plaintiff was not entitled to a specific performance of the contract for the reason that an earnest money deposit was provided for under the lease-option agreement of January 2, 1951, and the two letters exchanged between the parties in regard thereto, dated November 27, 1951 and June 11, 1952, respectively. We are still of the opinion that our holding was manifestly correct.

It appears that in the lease-option agreement dated January 2, 1951, signed by Lucas J. Schiro, the lessor, and Louis D. Haeuser, the lessee, the following provision was struck out: "Lessee is hereby given an option to purchase this property for the sum of $55,000 at any time during the term of this lease, which expires January 31, 1956," and the following provision in lieu thereof was inserted: "Lessee is hereby given the option of purchasing this property at any time during the period commencing August 1, 1953 and ending August 1, 1958 providing this property is under the present lease agreement at the time this option is exercised."

It further appears that on November 27, 1951, Schiro wrote the following letter to Haeuser:

"Inasmuch as the lease signed between you as lessee and Lucas J. Schiro, lessor, January 2, 1951, has an option in it to purchase the property at any time during the period commencing August 1, 1953 and ending August 1, 1958 providing this property is under the present lease agreement at the time the option is exercised is now waived providing you exercise your option to purchase and agree to pass the act of sale not later than April 1, 1952. Inasmuch as we failed to put in the lease the sum and price at the time that this option is to be exercised it is distinctly understood that the price is $55,000 all cash. It is understood if the option is exercised a 10% deposit in cash will be made with D. Marsiglia, Inc., agents representing the vendor."

It further appears that on June 11, 1952, Schiro again wrote Haeuser, as follows:

"This agreement signed this day will authorize you to exercise your option to purchase the property covered by the above lease. This option is to be for a period of 90 days from above date in the amount of $55,000. Should

you elect to exercise this option you must agree to pass the act of sale prior to the expiration of the 90 days. It is understood if the option is exercised a 10% deposit in cash will be made with D. Marsiglia, Inc., agents representing the vendor.

"If the above option and sale is not consummated prior to this 90-day period this agreement shall become null and void and the terms and conditions shall revert back to the agreement of the original lease signed January 2, 1951 between ourselves, giving you the understanding that the sale price although not stipulated in the lease shall be for $55,000."

Inasmuch as Haeuser's attempt to exercise the option took place after the expiration of the time limits set forth in the above letters, but during the period that the original lease-option agreement was in effect, the only option which he could have exercised was that contained in the original lease-option agreement, and plaintiff contends that the original lease-option agreement does not provide for a deposit.

We are not impressed with plaintiff's contention for the manifest reason that though the original option agreement is silent as to the amount of the purchase price to be paid and the obligation of the optionee to make a deposit of 10% of the

price, this inadvertent omission is fully explained in the contents of the above-quoted letters. It will be observed that in the original lease-option contract the option to purchase the subject property could only be exercised between August 1, 1953 and August 1, 1958, with the proviso that the lease agreement be in existence at the time the option is exercised. The lease contract had a primary term of five years beginning February 1, 1951, with the right of renewal for five additional years. Since the option could only be exercised during the life of the lease, and the primary term would have expired on January 31, 1956, the option right not expiring by its own terms until August 1, 1958, the lessee, to enjoy the benefits of this option right beyond the primary term, would necessarily have had to exercise the right of renewal. In other words, the option privilege could not have been exercised prior to August 1, 1953, thus undoubtedly affording to the lessor during a period of two and one-half years the desirable benefits of monthly rentals without sale obligations. However, on November 27, 1951, Schiro wrote plaintiff, therein recognizing the original option-purchase agreement in all of its terms and conditions, but granting plaintiff the right to exercise the option provided that the sale be executed not later than April 1, 1952. Obviously, this proposal evidenced on the part of Schiro his anxiety and desire to sell the subject prop-

erty prior to the option date fixed in the original contract. In this letter Schiro called to plaintiff's attention their mutual failure to have stated the purchase price in the original agreement, namely $55,000 cash, and with the accompanying predicate that plaintiff deposit 10% of the purchase price with D. Marsiglia, Inc., Schiro's realtor.

The second letter of June 11, 1952 addressed by Schiro to plaintiff is of similar import and again proposes that plaintiff purchase the property at the same consideration with the well-understood obligation of making a 10% deposit, this proposal, however, to be exercised within a period of 90 days from June 11, 1952. The only reasonable construction of the letters, when weighed in connection with the original contract affords no other conclusion but that in the exercise of this option plaintiff was required to deposit 10% of the purchase price of $55,000. This deposit was required whether plaintiff exercised the option during the period provided under the original contract or whether he exercised it within the additional periods of time stipulated in the letters. It would be inconsistent to hold that the letters are sufficiently valid to supply one of the essentials of a perfect option, namely, the price, thereby affording to plaintiff a cause of action for specific performance of the contract, as is pleaded here, and simultaneously deny the existence of an obligation for a deposit of 10%, for both the price and the deposit are relevant to and are in connection with one objective, i. e., the express requirements of exercising the option agreement. The required deposit and the amount of the purchase price as clearly understood between the parties themselves became, under the peculiar facts of this case, inseparable provisions and an adjunct to each other in the exercise of the existing option.

We are fortified in our views by the letter of August 21, 1954 from plaintiff to Schiro's realtor wherein plaintiff enclosed his check in the amount of $5,500 representing the required deposit of 10% of the purchase price of the subject property. If a deposit was not required under the option agreement only a blanket acceptance would have been necessary to effect a binding contract, entitling plaintiff to demand title. This circumstance renders appropriate the provisions of LSA–Civil Code, Article 1956, reading: "When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation." Johnson v. Shreveport Properties, 213 La. 485, 35 So.2d 25; see Pendleton v. McFarlane, 222 La. 569, 63 So.2d 1; Texas Company v. McDonald, 228 La. 353, 82 So.2d 37.

■ It is well established by the jurisprudence of this state that in the absence of a contrary intention, any contract to sell providing for a cash deposit of a portion of the purchase price by the prospective purchaser is presumed to be an agreement in which earnest money is given to bind the sale that either party may withdraw from such an agreement under Art. 2463 of the LSA–Civil Code, and that therefore neither party to such an agreement is entitled to specific performance. Ducuy v. Falgoust, 228 La. 533, 83 So.2d 118, and cases cited therein; see also Northcut v. Johnson, 143 La. 447, 78 So. 731; Snyder v. Wilder, 146 La. 811, 84 So. 104; McCain v. Hicks, 150 La. 43, 90 So. 506; Yates v. Batteford, 19 La.App. 374, 139 So. 37 and 746; Searcy v. Gulf Motor Co., La.App., 37 So.2d 445; 6 Tulane Law Review, 129; 26 Tulane Law Review, 498, 500, 511; 15 La.Law Review, 837, 839.

■ However, under Art. 2463, the party receiving the earnest incurs the obligation of returning double the earnest when he recedes from the contract to sell. Although plaintiff has not specifically prayed for a judgment decreeing double his deposit, his petition contains allegations fully setting forth a deposit by him of $5,-500, representing 10% of the purchase price, with Schiro's realtor, and contains a prayer for general and equitable relief. Furthermore, defendant admits the $5,500

deposit by plaintiff, but raises the defense that the deposit was earnest money.

We fail to find nor have we been pointed out any fact or circumstance which would justify the holding that the deposit in this instance was intended other than as earnest. In the absence of these facts we must necessarily conclude that this deposit was earnest money and that, to be relieved from the obligation of selling under the option agreement, Schiro thus incurs the obligation of returning to plaintiff double the amount of earnest. Hence, plaintiff is entitled to a judgment for this amount under the pleadings and in accordance with the nature and justice of the case. Legier v. Braughn, 123 La. 463, 49 So. 22; Yates v. Batteford, supra; Fox v. Doll, La.App., 46 So.2d 682, reversed on other grounds, 221 La. 427, 59 So.2d 443; LSA–C.C. Art. 2463.

■ In our original opinion we further decided that the evidence showed that the plaintiff had sublet the property which is the subject of this suit to a corporation known as National Lumber & Demolishing, Inc. without the knowledge or consent of the lessor and that such a sublease constituted a violation of the lease contract, thus voiding and abrogating the option contained therein. In that conclusion we now believe that we have committed error.

We find no evidence of a formal sublease, but merely a use of the premises

for the same purposes by a family corporation which was almost totally owned by the plaintiff. The record further discloses that two payments of rent were made directly to the lessor's agent by the alleged subtenant corporation, and that these payments constituted a "paper transaction" for convenience only. An examination of the lease contract discloses that in order to hold any sublease a violation of the lease-option agreement, there would have had to be an observance on the part of the lessor of the stipulated conditions contained therein. The lease contract provided that if the lessee violate any of the conditions therein stipulated, including the prohibition of subletting without the consent of the lessor, and this violation after written notice continue for a period of 60 days, then at the option of the lessor either the rent for the whole unexpired term of the lease would become due and exigible or the lessor could proceed for past due installments only with reservation of right to proceed for remaining installments, or could immediately cancel the lease. Thus it is obvious that a violation of the terms of the lease did not work an automatic cancellation. The lessor had first to comply with the conditions of 60 days' written notice stipulated so as to make available to him the right of cancellation.

We therefore hold that the alleged violation by lessee of the lease contract is without merit.

For the reasons assigned it is ordered, adjudged and decreed that the judgment of the lower court be and the same is hereby reversed, annulled and set aside. It is further ordered, adjudged and decreed that plaintiff's demand for specific performance of the contract sued on be and the same is denied but that he have judgment in his favor and against Mrs. Rosalie Castrogiovanni, surviving widow of Lucas J. Schiro, and Joseph L. Schiro, Mary Claire Schiro, and Francis J. Schiro, legal heirs of Lucas J. Schiro, in the full amount of $11,000, representing double the earnest money, with legal interest from date of judicial demand until paid. All costs to be borne by plaintiff-appellee.

McCALEB, Justice (dissenting).

After a further consideration of this case, I am convinced that the trial judge was correct in granting plaintiff a specific performance of the lease option contract dated January 2, 1951. In that agreement plaintiff was given the option of purchasing the leased property "at any time during the period commencing August 1, 1953 and ending August 1, 1958 providing this property is under the present lease agreement at the time this option is exercised." Although the essential price of $55,000 cash was not contained in the option, it was later supplied by Schiro in his letter to plaintiff

of November 27, 1951 [1] and reaffirmed by his letter of June 11, 1952, in which he offered plaintiff another option and then stated:

> "If the above option and sale is not consummated prior to this 90 day period *this agreement shall become null and void and the terms and conditions shall revert back to the agreement of the original lease signed January 2, 1951 between ourselves,* giving you the understanding that the sale price although not stipulated in the lease shall be for $55,000." (Italics mine).

Clearly, the new option tendered in this letter being conditioned upon plaintiff's failure to exercise it within the time required, the offer by its very terms became null and void, the original option remaining in full force and effect.

The majority opinion seems to be predicated on the construction given by plaintiff's attorney to this option offer of Schiro of June 11, 1952, it being deduced that, since plaintiff tendered a 10% deposit in an abortive attempt to exercise the additional option for immediate purchase (tendered in the letter) after it had expired, the contract should be interpreted, in view of Article 1956 of the Civil Code, as one providing for the giving of earnest money.

But this Article has no application to the case, in my opinion, for, according to its provisions, it may be employed as a rule of interpretation only "When the intent of the parties is doubtful,".

Since the language of the agreement contained in the letter of June 11, 1952 is plain, the applicable codal provision is Article 1945, that legal agreements have the effect of law upon the parties and that " * * * none but the parties can abrogate or modify them." In the third paragraph of this Article is provided the rule of construction governing this case, viz., "That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;".

Furthermore, I am convinced that the earnest money provisions of the Civil Code are inapplicable to options for the reasons stated by TATE, J., in his dissenting opinion this day filed.

TATE, Justice (dissenting).

I concur with the majority opinion on rehearing insofar as it concludes that the use or sub-lease of the property by the family corporation of plaintiff did not defeat any of plaintiff's rights under the option agreement contained in the lease. However, I respectfully dissent insofar as this opinion holds that any provision requiring a deposit upon exercise of an option

---

1. He stated "Inasmuch as we failed to put in the lease the sum and price at the time that this option is to be exercised it is distinctly understood that the price is $55,000 all cash."

converts the option agreement into an earnest money transaction.

Most favorably to the contention of the defendants-appellants, and as held by the majority opinion on rehearing, the option in the lease-option agreement of January 2, 1951, as amplified by the lessor's letter of November 27, 1951 supplying omissions in the option agreement, provides as follows:

"Lessee is hereby given the option of purchasing this property *for the sum of $55,000.00* at any time during the period commencing August 1, 1953 and ending August 1, 1958 providing this property is under the present lease agreement at the time this *option* is exercised. *It is understood if the option is exercised a 10% deposit in cash will be made with D. Marsiglia, Inc., agents representing the vendor."* (Italicized portions quoted from supplementing letter of November 27, 1951.)

Defendants contend that the clause requiring a deposit upon *exercise* of what is specifically denoted as "the *option"* creates the presumption that this is an earnest money agreement under LSA–Civil Code Article 2463. While indeed, as the cited cases [1] hold, a contract to sell providing for a cash deposit of a portion of the pur-

chase price by the prospective purchaser is presumed to be an earnest money transaction from which either party may recede, none of the cited cases concerned a contract to sell resulting from the valid exercise of an option. To the contrary, LSA–C.C. Art. 2462 specifically and unconditionally provides that upon the exercise of an option, the resultant contract to sell may be specifically enforced by either party, and no case holding otherwise has been called to our attention.

I think that LSA–Civil Code Articles 2462 and 2463, read in conjunction and in the light of their legislative history, clearly indicate that while a "promise to sell" made with the giving of a deposit is an earnest money transaction from which either of the parties may recede, an option to purchase given for a consideration upon acceptance creates a "contract or agreement to sell", the unconditional right to specific performance of which is given to either party to the option agreement irrespective of any deposit arrangements.

LSA–Civil Code Article 2462 provides as follows:

*"A promise to sell,* when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables,

---

[1]. Ducuy v. Falgoust, 228 La. 533, 83 So. 2d 118; McCain v. Hicks, 150 La. 43, 90 So. 506; Snyder v. Wilder, 146 La. 811, 84 So. 104; Northcut v. Johnson, 143 La. 447, 78 So. 731; Searcy v. Gulf Motor Co., La.App.Orleans, 37 So.2d 445; Yates v. Batteford, La.App.Orleans, 19 La.App. 374, 139 So. 37, 139 So. 746.

is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.

"One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, *the contract or agreement to sell,* evidenced by such promise and acceptance, may be specifically enforced by either party." (Italics mine.)

LSA–Civil Code Article 2463 provides as follows:

"But if the *promise to sell* has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double." (Italics mine.)

That Civil Code Article 2463, referring to a "promise to sell" made with the giving of earnest, relates to the "promise to sell" [2] of the *first* paragraph of the previous codal article and not to what in the *second* paragraph thereof is contradistin-guished as a "contract or agreement to sell" resulting from acceptance of an option, seems to me to be clearly demonstrated by the legislative history of these two codal articles, which in abbreviated form is summarized in Moresi v. Burleigh, 170 La. 270, 274–275, 127 So. 624, 625, as follows: "Prior to Act 249 of 1910, option contracts were not originally recognized by our Civil Code. Because of this hiatus in our law, article 2462 of the R. C.C. was amended by said act, appending a second paragraph. It is evident that the continuity of thought which formerly existed between articles 2462 and 2463 was broken by said act, and matters foreign to provisions relative to promises to sell were interjected. But it in no wise changes the plain meaning of said provisions."

Similarly, after a comprehensive discussion of earnest money in the light of the Roman and French law and the legislative history of LSA–C.C. Art. 2463, this court recently in Ducuy v. Falgoust, 228 La. 533, 548–549, 83 So.2d 118, 123, concluded; "Obviously, Article 2463 * * * is *a means whereby the parties relinquish their right to compel specific performance,* reserving to themselves the right to recede from the contract, in which case they, by their own covenant, stipulate as liquidated damages, the amount that is recoverable for their failure to comply, i. e., the vendee

---

2. That the historical term "promise to sell" used in both these codal articles is not strictly accurate, Cf., Comment,

"The Effect of Article 2462 of the Louisiana Civil Code", 3 La.L.Rev. 629 (1941), is immaterial in this regard.

by forfeiting the amount deposited and the vendor by returning the amount deposited with a like amount." (Italics mine.)

Earnest money, a "means whereby the parties relinquish their right to compel specific performance" (Ducuy v. Falgoust, above cited 228 La. at pages 548–549, 83 So.2d 118 at page 123), is not applicable to acceptance of an option. Stated otherwise, by the very nature of the contract an option agreement providing for a deposit of a portion of the purchase price upon exercise of the option does not create any presumption that the deposit is intended as earnest money. To the contrary.

An "option is simply an election to purchase, with a continuing offer to sell, during the time limits, supported by a consideration". Moresi v. Burleigh, 170 La. 270, 275, 127 So. 624, 626. When the right (option) to accept within a given time the owner's "continuing offer to sell" certain property is purchased for a consideration by a prospective buyer, the latter by the very nature of the contract is not purchasing merely the right to deposit earnest money through which he relinquishes any right to compel specific performance: he is purchasing the option (or the unconditional right to elect) to accept, during the time given, the other party's continuing offer to sell the property; upon exercise of which option by acceptance of the continuing offer he has (as specifically provided by the LSA–C.C. Art. 2642) the right to compel specific performance of the resulting contract to buy and to sell.

In the present case, the consideration paid by plaintiff to obtain the option to purchase the property was the leasing thereof from Schiro (defendants' predecessor in title) for a period of five years at $500 per month. It is well settled that plaintiff's execution of the lease containing the option agreement created a binding and absolute obligation, supported by sufficient consideration, on the part of Schiro and his successors in title to sell the property at any time during the limits stated in the option agreement, even though plaintiff was not himself obligated to buy. J. F. Auderer Laboratories, Inc. v. Deas, 223 La. 923, 67 So.2d 179, 45 A.L.R.2d 1026; Kinberger v. Drouet, 149 La. 986, 90 So. 367; Succession of Witting, 121 La. 501, 46 So. 606; Murphy v. Hussey, 117 La. 390, 41 So. 692; cf., Standard Oil Co. of Louisiana v. Milholland, 167 La. 707, 120 So. 59.

It is not only legally incorrect; it is extremely unrealistic to hold that plaintiff bargained for and obtained the option, not to purchase the property upon timely acceptance, but merely to deposit earnest money. If the property depreciated in value, either on the open market or to plaintiff himself, plaintiff would have little occasion to exercise the option and make the required down-payment deposit pending completion of the sale arrangements.

If on the other hand the property appreciated in value (as it apparently did), plaintiff's deposit in acceptance of the option would (if characterized as earnest money) signify merely plaintiff's acceptance of Schiro's right to withdraw (upon payment of a comparatively slight penalty) from the latter's agreement to sell.

For these reasons, I respectfully dissent.